STATE OF TENNESSEE *ex rel.*, COMPLAINANT, APPELLEE, *v.*
RETAIL CREDIT MEN'S ASSOCIATION OF CHATTANOOGA,
DEFENDANT, APPELLANT.

(*Knoxville,* September Term, 1931.)

Opinion filed December 5, 1931.

454

Moore & Moore, and Frank Spurlock, for complainant, appellee.

Strang & Fletcher and Sizer, Chambliss & Kefauver, for defendant, appellant.

Mr. Chief Justice Green delivered the opinion of the Court.

This suit was brought in the name of the State upon the relation of several members of the Chattanooga Bar alleging that the defendant corporation, organized under chapter 58 of the Acts of 1901 as a commercial, mercantile and protective agency, was illegally engaging in the practice of law. An injunction was sought against certain activities of defendant and it was prayed that, on account of its unlawful practices, the corporation should be dissolved and its charter forfeited.

The defendant answered, setting out in detail its organization, purposes and method of conducting its business, and denying that it had exceeded its charter powers or had been guilty of any misconduct or that relators were entitled to any of the relief sought.

Proof was taken and on the hearing the chancellor decreed an injunction against particular undertakings on the part of defendant but declined to decree a forfeiture. The defendant prayed for and was allowed a special appeal to the Court of Appeals. The relators filed the record for writ of error in that court. The details of the chancellor's decree, including the nature of defendant's appeal, will be more fully set out hereafter.

The Court of Appeals affirmed the chancellor's decree after overruling a motion to transfer the cause to this

court. Meanwhile the relators dismissed their writ of error in the Court of Appeals and filed the record for writ of error in this court. The defendant filed a petition for *certiorari* to review the action of the Court of Appeals, which writ we granted, and the whole case has been heard here.

We are of opinion that the Court of Appeals improperly refused to transfer the cause to this court. The suit was one in the nature of *quo warranto* under section 5165 *et seq.,* Thompson's-Shannon's Code. Jurisdiction of an appeal in such a case is given to this court by chapter 100 of the Acts of 1925.

As we have so often pointed out, under the Act of 1925, it is the character of the case as presented to the lower court that determines the jurisdiction on appeal. *Cox* v. *Smith,* 154 Tenn., 369; *Gormany* v. *Ryan,* 154 Tenn., 432; *Johnson* v. *Stuart,* 155 Tenn., 618; *Garrett* v. *Garrett,* 156 Tenn., 253. Decisions defining the jurisdiction of the Court of Civil Appeals are not in point. Chapter 76 of the Acts of 1907, regulating appeals to that court, made the matter in question on appeal determinative of jurisdiction. Chapter 100 of the Acts of 1925, regulating appeals to the Court of Appeals, is altogether different.

The Court of Appeals being without jurisdiction herein, this court takes jurisdiction on petition for *certiorari* because of the error of that court in failing to transfer. *Campbell County* v. *Wright,* 127 Tenn., 1. The case accordingly will be disposed of here as though directly appealed to this court and proceedings in the Court of Appeals will not be further noticed.

Defendant corporation was chartered, as stated above, under chapter 58 of the Acts of 1901, which statute provides for "the organization of corporations for the purpose of conducting commercial, mercantile and protective agencies for the purpose of collecting debts." The form of charter indicated by this Act sets out that the purposes of such corporation are those "usual and appropriate to the business of commercial, mercantile and protective agencies."

The capital stock of the defendant was fixed at $10,000, divided into shares of $10 each, no member being allowed to own more than one share. The members are composed of merchants, bankers, and others, in the City of Chattanooga and are required to pay annual dues. In consideration of the payment of such dues the members are entitled to various services from the corporation, including copies of books showing the credit rating of those doing business in Chattanooga, a certain number of special reports as called for and other services not necessary to enumerate. No dividends have been declared by the corporation but earnings in excess of the expense of operation have been used to add other lines of service for the benefit of the members. Defendant publishes a daily bulletin for the information of its members in which is printed a list of all suits brought in the courts of Hamilton County, a list of deaths, marriage licenses, bankruptcy petitions, building permits, mortgages, etc., etc. The membership of the association at the time of suit was about 235. The association renders services to its stockholders and members only, except that an arrangement is made with like agencies in other cities for reciprocal services between such agencies for the benefit of their respective members.

Sometime after its organization, namely in July, 1928, a collection department was added to the business of the defendant. This is said to have been done at the request of a large number of the members because of dissatisfaction with the manner in which their collections had been previously handled by attorneys and others. Collections were undertaken by defendant under a uniform schedule of charges. Fifty per cent on claims under $10; a minimum of $5 on claims of $10 to $20; 25 per cent on claims of $20 to $200; and special arrangements for claims in excess of $200.

It is against the operation of the collection department, chiefly, that this suit is directed. It therefore seems proper to set out in substance the findings of the chancellor with respect to defendant's conduct of this branch of its business. Such findings, except as to certain deductions drawn by the chancellor, are not challenged.

The chancellor describes the character of letters which the defendant would write to those against whom it received claims for collection and says that when these minatory letters failed to bring the alleged debtor to book, suit is instituted as a matter of course. To look after these suits, defendant employed a licensed attorney and paid him a fixed salary of $200 per month. When claims were in the form of notes providing for attorney's fees, the defendant collected and appropriated such fees to itself.

The defendant employed a deputy sheriff to devote his entire time to the service of process in suits brought upon claims placed in its hands for collection and guaranteed the officer a stipulated monthly salary. The fees earned by the officer in the service of such process were

appropriated by defendant to its own use, although the fees never amounted to as much as the guaranteed salary.

Defendant arranged with a justice of the peace to have all of its magistrate's suits brought before him. This justice of the peace kept a special docket on which he entered nothing but suits on defendant's claims. From July 28, 1928, to June 20, 1929, there were 1200 such suits entered upon this docket, and from July 20, 1929, to May 20, 1930, there were 998 suits entered on this docket. All these suits were begun and prosecuted by the attorney employed by defendant.

Defendant made one change in its attorneys during this time. The present attorney stated that he had seven or eight suits on defendant's claims pending in the chancery court and three or four such suits in the circuit court. When moneys were realized upon judgments, the defendant collected and receipted for the same, appropriated the officer's fees and any attorney's fees that were recovered, deducted its scheduled commission, and remitted the balance to the members.

The chancellor observed ''that in all this the defendant was practicing law in the courts of the State is, I think, clear.''

It further appears from the chancellor's findings that the defendant's employed attorney was called before the grievance committee of the local bar association with respect to the manner in which he was handling defendant's collection business. Thereupon certain changes were made in the method of doing business. Previously the attorney had his office in defendant's collecting department and had entire charge of that department except the bookkeeping. After his interview with the com-

mittee of the bar association, the attorney took an adjoining office on the same hallway of the same building and a connecting door between the office he occupies and offices occupied by defendant's force is kept closed and locked. Defendant, however, furnished the attorney with use of one of its stenographers, paid his telephone bill, paid his postage, and furnished him his letterheads. Previously defendant guaranteed the officer his salary. Thereafter the attorney guaranteed it. Instead of defendant collecting the officer's fees, the attorney allowed the officer to collect them himself and he paid the officer the difference between the fees collected and an agreed salary. The salary of the officer was raised at about this time and it was the general manager of defendant who dictated the raise. Prior to the hearing, this employment of a single officer ceased and the defendant's business was distributed. Before the intervention of the bar association, defendant collected the moneys paid in on judgments. Thereafter the attorney collected these moneys and deposited them in a bank account to his own credit. The attorney accounts to the defendant and defendant to the client. Instead of the attorney receiving an open and avowed salary of $200 per month, he was put on a commission basis. The attorney still, however, draws for his own use the exact sum of $200 per month from the bank account built up as aforesaid. This course of business resulted in the accumulation of a surplus of some $800 in this bank account. The manager of the defendant thereupon cut the rate of commission allowed the attorney from 25 per cent to 15 per cent and then to 10 per cent. At the present time there is a surplus of some $200 in the bank account. The attorney testified

that this $200 belonged to him but the chancellor said if so, it belonged to him by grace of defendant's manager, and added that defendant's manager appeared to have seen to it that the balance in the bank account amounted to only an inconsiderable sum.

The chancellor concluded that the changes made to meet the complaint of the bar association were ostensible and not real and that arrangements with the attorney remained fundamentally the same. That the attorney was still an employee of defendant and not the attorney of the members.

Reference was made by His Honor to the testimony of one of the members in which the latter disclosed that there was no difference in the cost of collection to the members of the association when suit was brought on a claim and when suit was not brought on a claim.

Confirming the view of the chancellor that the attorney works as an employee of defendant and not as the attorney of the members is the testimony of the attorney himself describing the new arrangement. He said "I take all the commission or all the fee which is paid on the note by the debtor and the fee which I have charged clients started off at 25 per cent, but the association could not make their *overhead* on that and it was reduced to 15 and at the present time they are operating on a 10 per cent basis on open accounts."

What connection there could be between this attorney's scale of fees and the *overhead* of defendant, it is difficult to see, unless defendant, rather than the clients, was paying his fees.

The chancellor held that defendant was practicing law in another respect, saying: "In its reports to members

of its building supply group, it undertakes not only to abstract the record under which the customer claims title, but to pass upon the title for a fee. Thus, in said Exhibit 16, the defendant reports 'Status of Title: Within the scope of our investigation, except for the encumbrances shown above, property appears clear, free and unencumbered in the name of Irene W. Connelly.' This is an opinion which none but a licensed attorney is entitled to give and charge for. For extra reports of this kind the defendant charges a fee of $2.''

While there were some other charges, the chancellor found that defendant was practicing law in two respects only. In the manner in which its collection business was handled and with respect to these reports on title.

■ We understand that defendant's counsel do not question the proposition generally that a corporation cannot practice law. There is said to be no difference of judicial opinion as to this. Note, 73 A. L. R., 1328. The reasoning of the cases is well exemplified in an opinion of the New York Court of Appeals as follows:

''The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. The right to practice law is in the nature of a franchise from the state, conferred only for merit. It cannot be assigned or inherited, but must be earned by hard study and good conduct. It is attested by a certificate of the supreme court, and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of

the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in." *Re Co-operative Law Co.,* 198 N. Y., 479, 32 L. R. A. (N. S.), 55, 139 Am. St. Rep., 839, 19 Ann. Cas., 879, 92 N. E., 15.

Cases to like effect are *People* v. *Merchants Protective Corp.,* 189 Cal., 531, 209 Pac., 363; *State ex rel. Lundin* v. *Merchants Protective Corp.,* 105 Wash., 12, 177 Pac., 694; *Re Otterness,* 181 Minn., 254, 232 N. W., 318, 73 A. L. R., 1319; *Re Eastern Idaho Loan & Trust Co.,* 49 Idaho, 280, 288 Pac., 157, 73 A. L. R., 1323; *People of the State of Illinois ex rel.* v. *Peoples Stock Yards State Bank, Illinois Supreme Court,* June 18, 1931, and other cases collected in a Note, 73 A. L. R., 1328.

In the cases just referred to various corporations undertook to perform various legal services through licensed attorneys paid by them, the corporations paying the attorneys and the corporations themselves collecting the fees earned. Some of the decisions were based on statutes making it a criminal offense for one not duly licensed to undertake the practice of law. Others of the decisions were apparently supported by no statute but rested on inherent incapability of the corporation to exercise such functions.

Properly to dispose of the assignments of error made by the defendant in this court, it will be necessary to set out the decree of the chancellor insofar as he granted in-

junctive relief to relators and insofar as said decree contained the special appeal prayed and allowed.

"It is therefore ordered, adjudged and decreed that the defendant be and it is hereby enjoined from:

"(a) Soliciting claims for collection with the understanding with its clients that suit will be instituted by it and collection enforced by legal process.

"(b) Employing a licensed attorney to give legal advice to its clients.

"(c) Employing a licensed attorney to bring suits at law and in equity for its clients and thus evade the laws of Tennessee with respect to admission to the Bar.

"(d) Collecting attorney's fees on notes against the makers, sureties and endorsers of such notes.

"(e) In anywise engaging in practice of law in any of the courts or out of court, in Chattanooga or Hamilton County, Tennessee, either itself, through its officers or by employing a regularly licensed, practicing attorney.

"The costs of this cause will be paid by the defendant, for which execution will issue.

"From so much of the foregoing decree as holds and adjudges (a) that defendant has no right or power to employ a licensed attorney to bring and prosecute suits on claims placed with defendant for collection; (b) that defendant is unlawfully engaged in the practice of law in the particulars set forth in the decree and in the opinion of the Court or otherwise, and (c) from so much thereof as grants injunction against defendant as hereinbefore set forth, defendant prays an appeal to the next term of the Court of Appeals at Knoxville, Tennessee, which is granted upon the execution by defendant of an

appeal bond in the penalty and conditioned as required by law.''

From the nature of the appeal taken the only questions open to defendant in this court are the propriety of the chancellor's action in restraining it from employing a licensed attorney to bring suits on claims placed with it for collection and in restraining it from practicing law in the conduct of its collection business and in the making of reports on title. It was only in the two particulars mentioned that the chancellor found the defendant was practicing law.

Defendant's first assignment of error goes to the jurisdiction of the Court of Appeals. This we have already considered.

The second assignment of error is that the chancellor erred in holding that defendant ''has no power or authority under its charter to engage an attorney to bring suits on claims placed with defendant for collection.''

We do not understand the chancellor so to have held nor to have enjoined defendant from so proceeding. As we construe the chancellor's opinion and decree, the defendant is free to engage for the retail merchants and others about the collection of their claims as many attorneys as these customers authorize. The lawyer, however, must be engaged to represent the merchant whose claim is turned over. The merchant must become a client of the lawyer. A privity must be created between these two. The lawyer must institute and conduct the suit as attorney for his client, not as an employee of his client's agent. The agent, a corporation, is incapacitated from beginning and directing a lawsuit for others, either

through a lay employee or through an employee who is a member of the bar.

The defendant was enjoined from soliciting claims with the understanding that suit would be brought by *it* upon those claims, and was enjoined from employing a licensed attorney to bring suit for *its* clients. The chancellor had in mind the proof in this case showing defendant's methods of business—taking claims for collection upon a fixed schedule of charges, which charges included the services of an attorney, if necessary—the fixing by defendant of the attorney's compensation, either a salary or commissions commensurate with the salary, said commissions likewise being regulated by defendant's overhead. The injunction was aimed at these practices.

It is urged that the charter power of defendant to collect debts carries by implication the power to bring suit on such debts, since suing upon claims is a usual and ordinary method of collecting them. We are referred to those cases holding that the creation of a corporation for a specific purpose implies the power to use the necessary and usual means to effectuate that purpose.

While this court has been more liberal, perhaps, than others in recognizing the existence of implied corporate powers, we could not, as a matter of course, recognize any implied power in a corporation to do an illegal thing.

Section 5772, Thompson's-Shannon's Code, provides that "no person shall practice as an attorney or counsellor in any of the courts of this State without a license obtained for that purpose." Since a corporation cannot be licensed for this purpose, an effort on the part of the corporation to practice law must be regarded as forbidden.

■ The third assignment of error questions the action of the chancellor in holding that in the arrangement and agreement entered into by defendant with respect to the institution and prosecution of suits placed with it for collection, defendant has been and is engaged in the practice of law.

'What we have previously said and the authorities hereinbefore cited seem to be sufficient notice of this assignment. For a time defendant carried on the practice of law through an employee who was paid a salary. Later it carried on the practice of law through an employee whom it paid, out of commissions for which it had contracted, on a percentage basis.

It is difficult to see how an incorporated collection agency can maintain a law department operated by its employees, working either on a salary or a commission, without practicing law. This is so because of the nature of the business. Such an enterprise is organized to attend to the business of others. Rendering legal service to another is the province of a lawyer.

Methods of handling collections similar to defendant's methods by similar concerns have been frequently held by other courts to constitute practicing law. *Midland Credit Adjustment Co.* v. *Donnelley,* 219 Ill. Apps., 271; *State ex rel. Lundin v. Merchants Protective Corp., supra; People* v. *Merchants Protective Corp.,* 189 Cal., 531, 209 Pac., 363; *Creditors National Clearing House* v. *Bannwart,* 227 Mass., 579, 116 N. E., 886, Ann. Cas., 1918C, 130. In the last named case the plaintiff, a collection agency, sued a subscriber for his dues. He defended on the ground that plaintiff held itself out to be lawfully qualified to practice law in the courts of Massachusetts—

an illegal thing. The trial judge told the jury that "if by the true construction of the agreement between it and the defendant (construed in the light of the way it conducted its business), the plaintiff maintained a law department, the affirmative defense set up in the answer was made out. But that (on the contrary), if by the true construction of the agreement, the defendant (plaintiff) agreed to procure legal advice for the defendant from attorneys not under salary from it and to put any case which required the services of a lawyer into the hands of lawyers not under salary from it, the defense was not made out." The jury returned a verdict for the defendant and the only fault the Supreme Judicial Court of Massachusetts found with the instruction quoted was that it was too favorable to plaintiff in leaving the construction of the contract to the jury at all.

The fourth assignment of error complains of the action of the chancellor in holding that defendant was practicing law in making reports to its members as to the title of real estate.

It seems to us that this assignment of error is well made. As heretofore noted, the defendant would report to its customers on the status of the title and would certify that "within the scope of our investigation, except for the encumbrances shown above, property appears clear, free and unencumbered." We agree with counsel that this merely amounts to a certificate that, except as noted, there is no lien of record against the particular property. The defendant does not undertake to say the title is good. It does not advise as to the nature of defendant's title, or as to the validity of liens, if any exist.

The certificate is not such an opinion as a lawyer's would be on a title, but is a certificate similar to that commonly furnished by an abstracter, and the business of making abstracts by corporations has been too long recognized to be questioned at this time.

The matters complained of in the fifth assignment of error have been heretofore considered.

The sixth and seventh assignments of error challenge certain holdings of the Court of Appeals. Since we have concluded that court was without jurisdiction, it is not necessary to notice their observations.

The eighth assignment of error questions the holding of the chancellor that Tennessee statutes prohibited the practice of law out of court by one without a license. It will be recalled that section 5772, Thompson's-Shannon's Code, above quoted, prohibits any person without a license from practicing "in any of the courts of this State," and chapter 247 of the Acts of 1903, providing an examination for applicants of admission to the bar, enacts that one applying to be admitted "as an attorney or counsellor in the courts of this State may be licensed to practice law only as herein prescribed."

Inasmuch as the chancellor found that defendant was practicing law out of court in one respect only, and as we disagree with His Honor about this, it is not necessary for us to enter into a discussion of this assignment of error.

The ninth assignment of error questions the action of the chancellor in holding that chapter 158 of the Acts of 1919 applied to the defendant.

We see no error in this ruling. That Act declares that the carrying on, conducting or practice of any profession,

business or occupation which is prohibited by the law of this State, unless the person so engaging in such profession, business or occupation is in the possession of or holds a license, etc., is a public nuisance and subject to be abated and enjoined. Having found that the defendant was practicing law without a license, we think its conduct fell within the letter as well as the spirit of the Act of 1919 and that the chancellor properly enjoined its illegal course of conduct.

The injunction awarded by the chancellor will be modified so as to allow defendant to continue furnishing to its members certificates with respect to titles as heretofore.

The plaintiffs have filed this record for writ of error, insisting that the chancellor should have appointed a receiver for defendant corporation, abated its further operation as a nuisance, ordered its charter forfeited and all of its business wound up.

Under previous decisions of this court, we do not think the chancellor erred in refusing to apply these drastic remedies. The chancellor ordinarily has a discretion as to declaring a forfeiture in a case of this sort. Unless a statute requires that the corporation be dissolved, a dissolution will not be decreed usually for acts merely in excess of the corporate powers. The interest of the public is to be considered and there must be a wilful abuse of power to justify forfeiture. We hardly think this is a case of wilful abuse. Defendant acted under legal advice and there was room for an honest difference of opinion as to the legality of its methods. *State of Tennessee* v. *Burley Tobacco Growers Asso.,* 2 Tenn. App., 674; *State ex rel.* v. *Baseball Club,* 127 Tenn., 292;

*State ex rel.* v. *Cumberland Telephone & Telegraph Co.,* 144 Tenn., 194; *State* v. *Columbia & Hampshire Turnpike Co.,* 34 Tenn. (2 Sneed), 253; *State* v. *Merchants Insurance & Trust Co.,* 27 Tenn. (8 Humph.), 235.

Relators make another assignment of error with respect to the action of the chancellor in declining to permit an amendment to the prayer of the bill praying judgment for certain taxes which it is alleged the defendant corporation was liable for and has escaped. This assignment of error is not supported by any brief, however, and we assume that it has been abandoned. Obviously this is not the sort of suit in which to collect delinquent taxes.

Modified as indicated, the decree of the chancellor will be affirmed. The costs of appeal will be divided between relators and defendant. Costs below will remain as taxed by the chancellor.