14742

EZELL ET AL. v. RITHOLZ ET AL.

(198 S. E., 419)

*Messrs. Calhoun Thomas* and *Benet, Shand & McGowan,*
for appellants,

*Messrs. John W. Crews* and *John F. Williams,* for respondents,

August 20, 1938.

The opinion of the Court was delivered by MR. L. D. LIDE, ACTING ASSOCIATE JUSTICE.

In the year 1917 the General Assembly enacted a law regulating the practice of optometry, and this Act with subsequent amendments was incorporated in the Code of 1932, Sections 5232 to 5250, both inclusive. And some further amendments were made in the year 1932. This law provides for the appointment of a Board of Examiners, and it is further required that every person before beginning to practice optometry shall pass an examination before the Board "in theoretic, practical and physiological optics, theoretic and practical optometry and in the anatomy of the eye." Upon the passage of this examination and the payment of

the required fees a certificate or license is issued. The statute exempted from examination optometrists who had been in actual practice in this State for more than two years prior to the passage of the Act in 1917. In the year 1937 certain sections of the law relating to the practice of optometry were further amended, so as to further define the practice thereof, and to prohibit misleading advertisements in connection therewith, Acts 1937, page 394.

This amendment amplifies Sections 5232 and 5245 of the 1932 Code by defining in detail the practice of optometry and prohibiting misleading advertisements and various practices tending to the injury of the public and the lowering of the standards of the profession or vocation. Section 5248 is also amended, and as so amended prescribes that nothing in the Article relating to optometry shall be construed to apply to physicians authorized to practice under the laws of the State, "in the due course of their private professional practice", subject to certain stipulations immaterial here. Nor does this Act apply to persons who sell as merchandise from a regular established place of business ready-made eyeglasses or spectacles.

It will thus be seen from this legislation that the General Assembly has recognized the public importance of the practice of optometry, no doubt because it relates to that most delicate organ, the eye, and one of man's best gifts, that of vision. Hence one seeking to engage in this calling must undergo such training and preparation as will enable him to pass the necessary examination and to measure up to the standards required by the law.

This Act provides in Section 5246, Code, 1932, that any person violating the provisions of the Article in question shall be deemed guilty of a misdemeanor, and on conviction shall be fined not less than $25.00 nor exceeding $100.00, or imprisoned not less than 20 days nor more than 30 days; one-fourth of all fines received to be paid to the person or persons furnishing proof necessary to convict, and the remaining three-fourths to go to the common school fund.

The plaintiffs above named, who are the respondents here, consist of the following, to wit: The members of the South Carolina Board of Examiners in Optometry, appointed by virtue of the legislation above mentioned, and whose duty as therein stated is to carry out the purposes and enforce the provisions of the Article relating to the practice of optometry; the South Carolina Optometric Association, an eleemosynary corporation, and several persons named who are individual optometrists, duly licensed as such and engaged in the practice of the profession of optometry in certain cities of this State, bringing this action in behalf of themselves and all other persons similarly situated in this State. The defendants above named (except H. S. Adams, who was dismissed from the action), who are the appellants herein, are partners in trade doing business in various cities of this State as National Optical Stores Company.

Very briefly stated the complaint herein alleges that the defendants are not authorized or licensed to practice optometry in this State, but that they are actually unlawfully practicing the same, and are advertising the sale of eyeglasses in a manner calculated to mislead and deceive the public: that they furnish to the general public in their places of business in this State for compensation eye examinations· to determine the type of glasses needed by the customer (but all such examinations are alleged to be hurried, inadequate and incomplete, etc.), and that in order to furnish such examinations and the eyeglasses so prescribed they frequently use in the capacity of employees or partners medical doctors who hire out and brokerage their medical skill to their employer, the National Optical Stores Company, and that unskilled and unlicensed assistants are frequently employed who participate in eye examinations. The complaint further alleges that the plaintiffs who are individual optometrists have followed the profession for an extended period of years and have built up optometrical practices which are of great value to them, and that the alleged conduct of the defendants is unlawful and results in irrepar-

able damage to the plaintiffs herein and to all licensed members of their profession as well as being detrimental to the public. The prayer of the complaint is for injunction, no other specific relief being sought; but there is the usual prayer for general relief.

The defendants interposed a demurrer to the complaint which alleges in effect that the complaint shows on its face that the plaintiffs have an adequate remedy at law under the criminal provisions of the statutes, and that the Court of Common Pleas is therefore without jurisdiction; and further, that the complaint does not show that the defendants are actually engaged in the practice of optometry; and further, that the plaintiffs do not have legal capacity to sue since the action is not brought in the name of the State of South Carolina, and is not a criminal but an equitable one. The demurrer also purports to raise a constitutional question, but since there is no exception on this point it need not be considered.

The defendants also gave notice of their objection to the jurisdiction of the Court upon substantially the same grounds as those of the demurrer, and they also answered reserving their rights under the demurrer and other motions.

On November 29, 1937, Hon. G. Duncan Bellinger, Judge of the Fifth Circuit, issued a rule to show cause why a temporary injunction should not be issued, and at the hearing of this rule affidavits were submitted on behalf of the plaintiffs, and testimony on behalf of the plaintiffs and of the defendants was taken. But these affidavits and the testimony so taken are not contained in the transcript of record on this appeal. When the rule to show cause was heard Judge Bellinger also heard the demurrer and the objection to the jurisdiction of the Court. On January 8, 1938, he overruled the demurrer and the objection to the jurisdiction of the Court, and filed an order granting the temporary injunction and referring the cause to the Master for Richland County to hear the case on the merits and report the testimony to the Court with his findings on all issues

of law and of fact. Judge Bellinger stated in his order that he overruled the demurrer and the objection to the jurisdiction of the Court and that he would thereafter in a separate order give his reasons therefor, but such order is not contained in the transcript of record herein. The following is quoted from the order of Judge Bellinger granting the temporary injunction, because it gives succinctly the factual basis on which he exercised his discretion to grant an injunction pending the hearing on the merits:

"After hearing the testimony of witnesses introduced on behalf of the plaintiffs, together with a number of affidavits and after reading the verified complaint, and hearing the testimony introduced on behalf of the defendants, I find that the plaintiffs in this action have made out a *prima facie* case entitling them to a temporary injunction in that it was clearly shown from the evidence that the defendants had entered into a scheme to violate the act or acts in question governing the practice of optometry.

"The plaintiffs here made a *prima facie* showing that the defendants are conducting their business in violation of Sections 5232 and 5233 relating to the regulation of the practice of optometry and Section 5245 of the Statutes at Large, page 395, of the Acts of 1937, approved the 1st day of May, 1937, for South Carolina, prohibiting the advertisement of prices of spectacles and the terms or guarantee of purchase thereof.

"I find further from the evidence that a *prima facie* showing has been made that the defendants herein entered into a scheme to violate, and continued to violate, the acts in question and do practice optometry under the rights and privileges conferred upon individual practicing physicians. That the defendants had a working agreement with the practicing physicians whereby the physicians maintained their offices as a component part of the storerooms or offices of the said defendants. I find that the physicians were guaranteed at least forty patients, and that if said physicians did not receive forty patients per week at one ($1.00) dollar

per examination, the defendants would make up the deficit. That the said physicians were not practicing in the due course of their private professional practice under the privileges conferred upon them by law, but were practicing optometry as confederate and as agents and servants of the defendants, who received the benefits of the privileges conferred upon said medical doctors, whose offices were adjacent to, and in one instance directly in the place of business of the said defendants."

The exceptions of the defendants relate both to the granting of the temporary injunction and to the order overruling the demurrer, but these exceptions raise no issues of fact, and hence it was unnecessary to print the affidavits and testimony above mentioned. The only questions involved in this appeal are questions of law, which may be reduced to two, and which may be stated by us very briefly to be:

(1) Did the plaintiffs have any adequate remedy at law?

(2) Did the plaintiffs have legal capacity to sue?

Referring to the first question: We think it is manifest that the General Assembly of the State of South Carolina in dealing with the practice of optometry by the enactment of the somewhat elaborate and detailed legislation above mentioned had in mind of course the protection of the public health and welfare, and also the protection of the rights and interests of those lawfully engaged in that calling or profession. Incidentally it was provided that the violation of any of the provisions of this law should be deemed a misdemeanor punishable in the Criminal Courts. But obviously this provision could not have the effect of declaring that any such violation might not also amount to a civil wrong. Indeed, it is a well-recognized principle that the same act may constitute both a crime and a tort and may furnish the basis for both criminal and civil redress unless the statute otherwise declares. We make this preliminary statement because the theory of the appellants appears to be that the criminal provisions of the statute furnish the plaintiffs an adequate remedy at law, and they

rely strongly upon the established rule that equity has no criminal jurisdiction.

But in our opinion this principle is not really applicable to the case at bar, because the fundamental purpose of this suit is not to enforce the criminal law but to protect private and property rights. It is interesting to observe, however, that equity by reason of the broad scope of its remedial powers has through the process of enjoining a public nuisance, more or less frequently and quite effectually, aided in the enforcement of the criminal law of this State. *State v. City Club,* 83 S. C., 509, 65 S. E., 730; *State ex rel. v. Kizer,* 164 S. C., 383, 162 S. E., 444, 81 A. L. R., 722.

As we have already indicated, we are dealing here with the matter of the protection of property rights which incidentally will also tend to the protection of the public interests. And both reason and authority support the doctrine that the jurisdiction of the Court of Equity to protect rights of property is not displaced by the fact that the wrongs complained of are accompanied by, or are, violations of the criminal law. In the somewhat celebrated case of *In re Debs,* 158 U. S., 564, 15 S. Ct., 900, 39 L. Ed., 1092, the Supreme Court of the United States, speaking through Mr. Justice Brewer, expressed this principle in the following perspicuous language (page 909) : "Again, it is objected that it is outside of the jurisdiction of a Court of Equity to enjoin the commission of crimes. This, as a general proposition, is unquestioned. A chancellor has no criminal jurisdiction. Something more that the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive powers of the Court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature; but when such interferences appear the jurisdiction of a Court of Equity arises, and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law."

Are the rights of one duly licensed by the State to engage in the practice of a profession rights of a pecuniary nature? We do not think an affirmative answer to this question would meet with any real dissent. As was said by the Supreme Court of California, in the case of *Cavassa v. Off,* 206 Cal., 307, 274 P., 523, 526: "The right of a person to practice the profession for which he has prepared himself is property of the very highest character." And in the *West Virginia case* of *Sloan v. Mitchell,* 113 W. Va., 506, 168 S. E., 800, the Court says (page 801): "Cases are legion holding, in one way or another, that the right of a licentiate to practice his profession is a property right, or a right in the nature of a property right, or a valuable franchise, or a valuable privilege." See, also, *People v. Love,* 298 Ill., 304, 131 N. E., 809, 16 A. L. R., 703; *Butcher's Union etc., Co. v. Crescent City, etc., Co.,* 111 U. S., 746, 4 S. Ct., 652, 28 L. Ed., 585; *Butcher v. Maybury, D. C.,* 8 F. (2d), 155, and 6 R. C. L., 266.

Since there can be no reasonable doubt that the rights of those who have been duly licensed to practice optometry under the laws of this State are property rights of value, which they are entitled to have protected, and it is likewise free from doubt that to permit others to engage in this practice without complying with the law of the State tends to encroach upon the rights of licensed practitioners, does the fact that the violaters of the law may be prosecuted criminally afford any adequate remedy? We think that the use of the Criminal Courts solely for the redress of private and civil wrongs is generally to be deprecated, although of course there may be exceptional cases. And it is likewise our judgment that experience would demonstrate that such use of the criminal process would afford an ineffectual remedy. Hence the holding of the West Virginia Court in the case of *Sloan v. Mitchell, supra,* with reference to physicians and surgeons, expressed in the following language, states the doctrine which commends itself to us as being just and reasonable: "The right of a

licensed physician and surgeon to practice his profession is a valuable franchise in the nature of a property right to protect which he may sue in equity in the interest of himself and other physicians similarly situated, to enjoin a person from encroaching upon said right by engaging in the practice of medicine and surgery without a state license. A Court is not powerless to prevent the doing of an act involving encroachment upon valuable franchise rights of others merely because such conduct is denounced as a public offense."

This principle has likewise been approved with reference to other professions; for example, that of the law. *Dworken v. Apartment House Owners Association,* 38 Ohio App., 265, 176 N. E., 577.

But the appellants cite some authorities to the effect that the practice of optometry is not a learned profession, while on the other hand the respondents rely on several cases in which this calling is definitely recognized as being, especially in modern times, both a learned and a necessary profession. Suffice it to say that the Legislature of this State, as we have hereinbefore suggested, has given due recognition to the professional status of the practice of optometry, and, so far as the protection of professional rights is concerned, has placed it on a parity with other professions charged with important duties to the general public.

The authorities above cited relate to professions other than optometry, but there are other cases dealing directly with this vocation, among them being *Eisensmith v. Buhl Optical Co.,* 115 W. Va., 776, 178 S. E., 695, and *Commonwealth v. Houtenbrink,* 235 Mass., 320, 126 N. E., 669. And the *Michigan case* of *Seifert v. Buhl Optical Co.,* 276 Mich., 692, 268 N. W., 784, decided in 1936, appears to be almost precisely in point, the facts thereof having a marked similarity to the facts of the instant case; and there the Michigan Court holds (page 787) : "It is further claimed that plaintiffs have not sufficient property interest in the

subject-matter so as to entitle them to an injunction, and that the process may not be used for the purpose of enjoining a crime. Suit may be brought by parties engaged in a profession or business to enjoin unfair trade and practice which would be injurious to their interests, and the fact that such practices are punishable by criminal penalties is immaterial."

Counsel have not cited, nor has our research disclosed, any of our own decisions really in point on the matters now under consideration, but our conclusion is that the weight of authority is in line with the cases above cited, and that they are supported by the sounder reasoning, although there are a few decisions from Courts of very high standing to the contrary. The cases principally relied on by the appellants are the *Georgia case* of *Dean v. State,* 151 Ga., 371, 106 S. E., 792, 40 A. L. R., 1132, and the *North Carolina case* of *Matthews v. Lawrence,* 212 N. C., 537, 193 S. E., 730. The *Dean case* may be readily distinguished because there the suit was brought by the State to enjoin a public nuisance. The *North Carolina case* of *Matthews v. Lawrence,* however, which relates to photography, may really be deemed in point, for the Court says (page 731): "This statute clearly makes the alleged acts of the defendant complained of by the plaintiffs criminal, and it is a rule with us that there is no equitable jurisdiction to enjoin the commission of a crime, and that injunctions are confined to cases where some private right is a subject of controversy. Individuals who apprehend injury to their person or property by reason of any acts which are criminal are furnished an adequate remedy at law by having the perpetrator of such acts indicted and prosecuted by the state."

Without stopping to consider the very essential difference between the practice of photography and the practice of optometry, in that the former in nowise affects the public health, we do not find ourselves in accord with the reasoning or result of this decision. As we have heretofore said, it seems to us that the redress of private wrongs through the use of the criminal process could not be

deemed an adequate remedy. The case at bar being a case of novel impression in this State, we are of course at liberty to adopt that rule which in our judgment best conforms to the principles of equity and will tend to the furtherance of justice.

While as above stated, the exceptions raise no issues of fact, and the present appeal may be considered as if it were conceded that the defendants have violated the statutory law of the State relating to the practice of optometry, yet if it be suggested that the defendants here were not actually engaged in the practice of optometry because the eye examinations were made by duly licensed physicians who are allowed by law to practice, it is completely answered by the findings of fact by Judge Bellinger from which it is made perfectly clear that these physicians were not practicing "in the due course of their private professional practice," but were acting as the agents and servants of the defendants, National Optical Stores Company. If such a course were sanctioned the logical result would be that corporations and business partnerships might practice law, medicine, dentistry or any other profession by the simple expedient of employing licensed agents. And if this were permitted professional standards would be practically destroyed, and professions requiring special training would be commercialized, to the public detriment. The ethics of any profession is based upon personal or individual responsibility. One who practices a profession is responsible directly to his patient or his client. Hence he cannot properly act in the practice of his vocation as an agent of a corporation or business partnership whose interests in the very nature of the case are commercial in character. *State v. Kindy Optical Co.*, 216 Iowa, 1157, 248 N. W., 332; *State ex rel. v. Goldman Jewelry Co.*, 142 Kan., 881, 51 P. (2d), 995, 102 A. L. R., 334.

The second question for our consideration is: Did the plaintiffs have legal capacity to sue? The appellants contend in their argument that the plaintiffs

are without such capacity on the ground that the Board of Examiners is a mere administrative board without authority to institute this action and that the action could only be maintained in the name of the State. But since we have held that the purpose of this action is the protection of the private and property rights of optometrists, it is manifest that the State is not a proper party. And even if appellants are correct in their view that the suit may not be maintained by the Board of Examiners, or by the eleemosynary corporation, this does not appear to be material, because certainly the individual optometrists who are plaintiffs had full capacity to bring and maintain the suit. One of the exceptions contains a statement to the effect that the Court erred in overruling the demurrer on the ground that there is a defect of parties plaintiff, but an examination of the demurrer will show that this point was not therein made. However, even if· this had been stated as one of the grounds of the demurrer it would not avail the appellants for the reason that clearly there is no defect of parties plaintiff. It may perhaps be said that there are too many parties *but not too few*. *Lowry v. Jackson,* 27 S. C., 318, 3 S. E., 473. It might also be argued that there is a *misjoinder* of parties but this is not equivalent to a *defect* of parties. *Wright v. Willoughby,* 79 S. C., 438, 60 S. E., 971. Indeed, upon this phase of the case we are in full accord with the Michigan Court in the *Seifert case, supra,* where the bill in equity was filed by three individual plaintiffs as registered optometrists and the Michigan Society of Optometrists, a nonprofit Michigan corporation, on behalf of themselves and duly registered members of their profession; and the Court says: "It is further claimed that plaintiff corporation has not alleged that its members are optometrists, properly registered, or that it has any property rights involved. Even if there were any merit to these claims, at most there would be a misjoinder of a party, and the suit is well brought by the other parties against whom no such claims are made."

We have carefully considered all of the exceptions, and .

it is our judgment that they should be, and the same are hereby, overruled.

The order of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.