STATE *ex rel.* LOSER, ATTORNEY GENERAL,
*v.* NATIONAL OPTICAL STORES CO.

(*Nashville,* December Term, 1949.)

Opinion filed December 17, 1949.

434

B. B. GULLETT, of Nashville, for complainant.

DENNY, LEFTWICH & GLASGOW and ROBERT C. MURPHY, of Nashville, for defendant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The bill in this cause, as it was finally amended, and heard by the Chancellor, is a proceeding in the nature of *quo warranto,* Code Sections 9336-9358, brought in the name of the State on relation of the Attorney General for the 10th Judicial District, against the National Optical Stores Company, a Tennessee corporation. The prayer of the bill was that because the defendant corpora-

tion, without license or other authority, was practicing optometry in Tennessee, that the defendant be permanently enjoined from the practice of optometry, and that its charter be forfeited and revoked, and that the officers, agents and employees of the defendant be perpetually enjoined from the practice of optometry until or unless they had been duly licensed as such optometrists.

After overruling dilatory pleas of defendant, and after the defendant had filed an answer, the Chancellor, on motion of the complainant, heard the case on oral testimony and granted the prayer of the bill as amended, by revoking the charter of the corporation and perpetually enjoining the officers, servants, agents and employees of the defendant from practicing optometry until or unless they were duly licensed. The defendant has appealed.

The briefs and arguments have gone far beyond any issue raised by the bill and its amendment, and we think it necessary to state our conclusion of the essential issue presented.

It is admitted that, as charged by the State, the defendant corporation has no license to practice "optometry as a profession," that a license is a legal prerequisite of such practice, Code, Section 7026 et seq.; that optometry is a branch of the "healing arts," and that defendant corporation has no license to practice a "healing art" as required by Chapter 9, Public Acts of 1947. But defendant denies that as it was operating its business when the bill was filed, it was practicing optometry or a "healing art." Therefore, if the evidence of defendant's operation shows that the defendant was practicing optometry and a "healing art," its operation was *ultra vires* and unlawful, and the decree was proper under Code,

Sections 9316 and 9336 et seq. *State ex rel.* v. *Retail Credit Ass'n, infra.*

According to defendant's brief, the essential facts are not disputed, and the Chancellor, in an excellent opinion, found them as follows:

"The proof in this record shows that the defendant is in the business of making lenses and fitting and selling eye glasses. It is a Tennessee corporation, but is a part of a National Chain Store operation. Prescriptions written in local stores are filled in Chicago, and the glasses sold in Tennessee are made up in Chicago or the factory of the parent corporation, and shipped to Nashville, Knoxville, and Chattanooga for delivery to the purchaser.

"The defendant corporation employs, or has an arrangement with a medical doctor in each of its three stores, by which arrangement each doctor occupies a small space or office inside the store building of the defendant. The doctors' names generally do not appear on the front of the store, and are not listed in the telephone directory. These doctors, by arrangement with the defendant, are present during the time the store is open except for perhaps a short lunch period or possibly an afternoon off each week in some cases. The doctors devote their full time, while present at the store, to examining the eyes of customers who are directed to them by the employees of the corporation, and these doctors are guaranteed a fixed minimum weekly income by the corporation.

"The doctors charge a fixed examination fee of $2.00 per customer or patient, and after examining the patient's eyes, and writing the prescription, the patient is then ushered back into the sales room of the store where the manager, or an employee of the store, proceeds to

sell the patient glasses by showing samples of frames, etc., and, after agreeing with the customer on the type of frame, glasses, etc., and the price, the order for the glasses is sent to Chicago and shipped from there back to the store for the customer.

"If in any week the doctor's examination fees from the patients so directed to him by the corporate employees, fails to amount to the agreed stipulated weekly income, a voucher is sent in and a check from the corporation for the difference is paid him.

"While, in some instances, the doctors have an ostensible agreement to pay some small amount as rent for the office space occupied, the record shows that they, in fact, do not pay rent.

"It seems to the Court that the determinative question in this case is whether or not the doctors, above described, are employees of the corporation. If they are, the Court is of opinion that this plan or device by which the defendant corporation operates in Tennessee, constitutes the practice of optometry and is a violation of the Optometry Act, and of the statutes regulating the practice of medicine.

"A careful examination of this entire record, including the advertisements and pictures which have been made exhibits, the depositions of witnesses and the testimony heard in open Court, leads the Court to the inescapable conclusion that the plan or device by which defendant uses the services of the medical doctors in question, amounts to an evasion of the law and is not a *bona fide* arrangement. . . ."

From these facts, the Chancellor found that no narrow technical definition of the employer-employee relationship should be applied and that in the sense necessary to make

the doctors employees of the corporation, practicing their profession for it and in its name, the undisputed evidence forced the conclusion that the doctors were such employees and that, therefore, the corporation was practicing optometry.

The pertinent parts of the "Optometry Law" as it was last amended by Chapter 90, Public Acts of 1939, are as follows:

"(1) The term *'practice of optometry as a profession'* is defined to be (a) the employment of objective or subjective methods (either one or both), for the purpose of ascertaining defects of vision or muscular anomalies or other abnormal conditions of the eye; etc.

"(2) *The term 'optometrist' means a person* who is engaged in the practice of optometry as defined." (Emphasis supplied.) Code, Section 7027.

Code Section 7028 makes it unlawful to practice optometry without a certificate of registration and license or permit from the State Board of Optometry; for any optometrist to advertise prices or terms or extravagant claims of satisfactory services or guaranties; and finally the section provides:

"And it shall be unlawful for any person to practice or offer to practice optometry as an employee of any person not engaged primarily in the practice of optometry as a licensee under this chapter, or of any firm or corporation not engaged primarily in the practice of optometry under the actual and personal supervision of partners or sole stockholders or lessees who possess valid unrevoked certificates of registration as optometrists in and for the State of Tennessee and who have actual legal residences within the state." Code, Section 7028.

It is admitted that the defendant National Optical Stores Company is not a corporation falling within the definition above, so the question of the validity of this part of the Act is not before us.

Since the argument, the defendant has filed a supplemental brief in which the scope of the appeal is limited to the following propositions:

(1) That defendant, as an "optician" (merchant of optical goods) and the employed physicians as "oculists" are expressly exempted from the provisions of the Optometry and Medical Practice Acts;

(2) That the amendment of the Optometry Act passed in 1935, was unconstitutional;

(3) That some unspecified provisions of 1935 and 1939 amendments "have no real and substantial relation to the promotion of public health and safety," therefore, these Acts are unconstitutional;

(4) That by the Optometry Act as amended, the Legislature has declared the public policy of the State and the Courts have no authority to add to the legislation;

(5) That the State is estopped to prosecute this suit by the decree of the Chancery Court of Davidson County in 1937, in the case of *State Board of Optometry* v. *National Optical Stores;* and, finally

(6) That the physicians, under contract with defendant, are not employees, but independent contractors.

We will undertake to answer these propositions in the course of the opinion.

It is not debatable that if they were duly registered and licensed, the three doctors involved, acting independently, had a right to examine eyes and write prescriptions for eye glasses, and it is also clear that as a merchant, the defendant, as a merchant-optician, had a

right to sell eyeglasses in accord with the prescription. If the evidence supported a conclusion that the profession of the doctors was distinct from and independent of the business of defendant, the State would have no case, but we find that the evidence is to the contrary, and shows that the activity of the doctors and the sales of the defendant were so merged and combined that from the advertisement by which the customer was attracted to the defendant's store until the delivery of the glasses prescribed, the profession of the optometrist and the sale of merchandise by the optician was a single operation and enterprise.

''A customer who desires eyeglasses is taken to the physician, who examines the eyes and prescribes eyeglasses if needed. Other employees of the defendants assist the customer in selecting the shape and style of frames desired, grind and fit the lenses in accordance with the prescription of the physician, and then adjust the finished eyeglasses to the eyes of the customer. We conclude that the physician is the servant of the defendants (*Stuart* v. *Sargent,* 283 Mass. 536, 541, 186 N. E. 649), notwithstanding the fact that the defendants actually exercise no control over 'the mode, manner or result of the examination of the eyes of the customer and the doctor is left free to exercise his own will (and) judgment and to use his own professional skill and methods in making such examination.' *McDermott's Case,* 283 Mass. 74, 77, 186 N. E. 231; *Deyette* v. *Boston Elevated Railway,* [297] Mass. [129], 7 N. E. 2d 430.'' *McMurdo* v. *Getter,* 298 Mass. 363, 10 N. E. 2d 139, 140.

As found by the Chancellor, the defendant, though a Tennessee corporation, is a branch of a large chain of optical goods stores operating throughout the United

States and Canada. The chief executive authority of this chain is one B. D. Ritholz, who signed and swore to the answer in the present case, and the business operation, including the employment of licensed physicians, as it is presented by the present record, has been reviewed by the highest Courts of many other states, and by them determined to be unlawful. These cases, with the single exception of *State ex rel. Bierring* v. *Ritholz,* 226 Iowa 70, 283 N. W. 268, 121 A.L.R. 1450, cf. *infra,* have held that the physicians under contract were servants and employees of the corporation or of Ritholz, and that the business operation was, therefore, unlawful and to be enjoined. Among the cases from the highest Courts of other states so holding, are: *Ritholz* v. *Commonwealth,* 184 Va. 339, 35 S. E. 2d 210, 219; *Ritholz* v. *Johnson,* Wis., 17 N. W. 590; *Ezell* v. *Ritholz,* 188 S. C. 39, 198 S. E. 419; *Ritholz* v. *Arkansas State Bd. of Optometry,* 206 Ark. 671, 177 S. W. 2d 410.

Our own case of the *National Optical Stores Co.* v. *Bryant,* 181 Tenn. 266, 181 S. W. 2d 139, is authority to the same effect, so far as the decision goes. On the issues presented in that case, it was only necessary to decide that the employed doctor was an employee within the purview of the Unemployment Compensation Act. This Court held that he was such employee for the purpose of the Act, but that limited holding clearly eliminates the proposition by the defendant that the doctor was, or the present doctors are, independent contractors. Other cases where similar commercial operations involving contracts of employment with licensed doctors by optical merchants and jewelry stores are collected in a note in 102 A.L.R. 334 et seq. The case there reported, *State ex rel. Beck* v. *Goldman Jewelry Company,* 142

Kan. 881, 51 P. 2d 995, 102 A.L.R. 334, though not involving the present defendant, is on all fours with the present case and answers adversely many of defendant's propositions here. The great majority of the cases in the annotation decide that an operation like that of defendant is unlawful and may be enjoined. Those holding otherwise, like *State ex rel. Bierring* v. *Ritholz*, 226 Iowa 70, 283 N. W. 268, 121 A.L.R. 1450, base the decision on the fact that the practice of optometry is not the practice of a profession. Such was the basis of the holding of this Court in *Saunders* v. *Swann,* 155 Tenn. 310, 292 S. W. 458. But that opinion was based on the Optometry Act of 1925, and the decision was superseded by the amendment to the Optometry Act, Chapter 90, Public Acts of 1939, and the ''healing arts'' Act, Chapter 9, Public Acts of 1947. From the use of the words''person'' and ''profession'' in Code, Section 7026, as amended by the Act of 1939, and by the establishment of optometry as one of the ''healing arts'' by the Act of 1947, we can not escape the conclusion that it was the purpose of the Legislature to make the practice of optometry a profession, and so to overrule the contrary holding in *Saunders* v. *Swann, supra.*

The defendant devotes much time and argument to the assertion of the unconstitutionality of an amendment to the Optometry Act passed by the Legislature in 1935. On account of a defective caption, Judge Green, in the unpublished opinion of Puckett v. Marsh, suggested that that law was unconstitutional. No doubt, with that opinion before it, the Legislature in 1939, corrected the caption and re-enacted the law. The defendant makes no attack upon the caption of the amendment of 1939. We conclude that the question of the unconsti-

444

tutionality of the amendment of 1935, is immaterial and irrelevant to the present controversy. We will not pass on the constitutionality of a statute, or any part of one, unless it is absolutely necessary for the determination of the case and of the present rights of the parties to the litigation. *Phillips* v. *West*, 187 Tenn. 57, 213 S. W. 2d 3, 5.

■ Although, since the passage of the Acts of 1939 and 1947, a decision whether "optometry" is a business or a profession, has not been required of us, it is well established by our cases that the word "person" as it is used in our statutes and decisions which have to do with the eligibility to practice a profession, means *natural persons,* and does not include corporations. In the case of *Grocers' & Merchants' Bureau* v. *Gray*, 6 Tenn. Civ. App. 87, 92, in language particularly applicable here, it was said:

"A corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it *any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it."* (Emphasis supplied.) *In re Co-operative Law Co.*, 198 N. Y. 479, 484, 92 N. E. 15, 16, 32 L.R.A., N.S., 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879.

■ This statement was substantially approved as to the profession of law in *State ex rel.* v. *Retail Credit Men's Ass'n.*, 163 Tenn. 450, 43 S. W. 2d 918, and in *Haverty Furniture Co.* v. *Foust*, 174 Tenn. 203, 124 S. W. 2d. 694. The rule is uniform that a corporation cannot practice one of the learned professions. 19 C.J.S., Corporations, Section 956, and obviously, this implies that the corporation cannot employ a licensed practitioner, since a corporation acts only through agents,

*Haverty Furn. Co.* v. *Foust, supra,* to practice for it. *State ex rel.* v. *Goldman Jewelry Co., supra; State ex rel.* v. *Retail Credit Men's Ass'n,* 163 Tenn. 450, 466, 43 S. W. 2d 918.

In the South Carolina case of *Ezell* v. *Ritholz, supra,* the bill was filed for an injunction to prohibit the illegal practice of optometry on a business operation by Ritholz, which was substantially identical with that presented to us in the present record. In affirming the injunction decreed by the lower Court, the Supreme Court of South Carolina said in part:

"While as above stated, the exceptions raise no issues of fact, and the present appeal may be considered as if it were conceded that the defendants have violated the statutory law of the State relating to the practice of optometry, yet if it be suggested that the defendants here were not actually engaged in the practice of optometry because the eye examinations were made by duly licensed physicians who are allowed by law to practice, it is completely answered by the findings of fact by Judge Bellinger from which it is made perfectly clear that these physicians were not practicing 'in the due course of their private professional practice', but were acting as the agents and servants of the defendants, National Optical Stores Company. If such a course were sanctioned the logical result would be that corporations and business partnerships might practice law, medicine, dentistry or any other profession by the simple expedient of employing licensed agents. And if this were permitted professional standards would be practically destroyed, and professions requiring special training would be commercialized, to the public detriment. The ethics of any profession is based upon personal or individual responsi-

bility. One who practices a profession is responsible directly to his patient or his client. Hence he cannot properly act in the practice of his vocation as an agent of a corporation or business partnership whose interests in the very nature of the case are commercial in character. *State* v. *Kindy Optical Co.*, 216 Iowa 1157, 248 N. W. 332; *State ex rel. Beck* v. *Goldman Jewelry Co.*, 142 Kan. 881, 51 P. 2d 995, 102 A.L.R. 334.'' *Ezell* v. *Ritholz*, 188 S. C. 39, 198 S. E. 419, at page 424.

 Now, as to defendant's propositions that certain unspecified parts of the Optometry Act, as it was law at the time of the filing of the bill, were unconstitutional as not being a valid exercise of the police power for public health and safety, we note first, that no constitutional question was made by the pleadings, nor passed upon by the Chancellor. The propositions and the corresponding assignments are not properly before us for review. Rule 14(5), 185 Tenn. 868. Furthermore, the policy of legislation and the question whether a statute is or is not beneficial to the public health or safety, and so a reasonable exercise of the police power, is a question exclusively for the determination of the Legislature and is not a subject for judicial review. *Cummings* v. *Beeler*, Knoxville, 1949, Tenn. Sup., 223 S. W. 2d 913; *State* v. *Lindsay*, 103 Tenn. 625, 53 S. W. 950; *Condon* v. *Maloney*, 108 Tenn. 82, 65 S. W. 871; *Baker* v. *Hickman County*, 164 Tenn. 294, 47 S. W. 2d 1090.

''In determining whether such act is reasonable the courts decide merely whether it has any real tendency to carry into effect the purposes designed, that is, the protection of the public safety, the public health, or the public morals.'' *Notlow* v. *State*, 125 Tenn. 547, 590,

145 S. W. 177, 188, L.R.A. 1916F, 177; *Campbell* v. *McIntyre*, 165 Tenn. 47, 52 S. W. 2d 162; *State Board of Examiners for Architects and Engineers* v. *Rodgers*, 167 Tenn. 374, 381, 382, 69 S. W. 2d 1093.

Public policy is the present concept of public welfare or general good. The police power is the attribute of sovereignty by which the public policy is preserved and promoted. *Cf. Lonas* v. *State*, 50 Tenn. 287; *Naff* v. *Crawford*, 48 Tenn. 111, 115.

The undisputed facts of the present case compel the conclusion that the licensing provision of the Optometry Act, Code, Section 7028, is a reasonable exercise of the police power and of sound public policy, *Home Beneficial Ass'n.* v. *White*, 180 Tenn. 585, 588, 177 S. W. 2d 545; *Nashville Ry. & Light Co.* v. *Lawson*, 144 Tenn. 78, 87, 229 S. W. 741. The Chancellor found, and we have affirmed his holding, that the commercial operation of defendant, as the record presents it, was a fraud and evasion of law and that the contract of employment of the doctors was illegal and against public policy or public welfare, *Home Beneficial Ass'n.* v. *White, supra.* This application of public policy to a matter of public health, here human eyes and eyesight, is no amendment to the Optometry Act by the Chancellor, but is merely a judicial expression of the elementary principle that what is fraudulent and illegal is against public policy. *Nashville Ry. & Light Co.* v. *Lawson*, 144 Tenn. at page 87, 229 S. W. at page 743; *Naff* v. *Crawford, supra.*

The record shows, and the evidence is not disputed, that the extravagant advertisements placed in the newspapers by the defendant, directly resulted in patients for the doctors, but the aim of the advertisements was not the examination fee for the doctors, but

the sale of merchandise by defendant. As these advertisements were employed, they constituted a breach of the express provision, Code, Section 7028, of the Optometry Law by the doctors, and as the doctors were agents and employed of the defendant corporation, their practice of optometry was the practice of the corporation, *State ex rel. v. Retail Credit Men's Ass'n.*, 163 Tenn. 450, 466, 43 S. W. 2d 918; *Haverty Furn. Co. v. Foust,* 174 Tenn. 203, 212, 124 S. W. 2d 694, and the defendant is guilty, not only of practicing optometry without a license, but of a further illegal practice of that profession on account of the advertisements.

Defendant's next proposition is that by a decree of the Chancery Court of Davidson County, in the case of *State Board of Optometry* v. *National Optical Stores,* handed down in 1937, the State is estopped to prosecute the present suit. The record does not show that the Chancellor ever acted on this proposition. The record does show that on December 2, 1947, defendant filed (1) a motion to dismiss, (2) a plea in abatement, (3) a plea of *res adjudicata,* (4) a demurrer, and (5) an answer, in which the demurrer and the plea *res adjudicata* were relied on and in which the latter plea was elaborated. Thereafter, the only part of a decree that can be referred to the plea *res adjudicata,* was that of December 17, 1947, where the Chancellor ruled that defendant's motion to dismiss and abate was overruled, but whether this decree referred to the plea *res adjudicata,* is by no means clear. In any event, although the plea *res adjudicata* was relied on in the answer, no mention of its merits, nor disposition of it was made by the Chancellor in his final opinion and decree. The defendant took no steps by way of petition for rehearing to

correct this pretermission. The fact that the record shows no action taken by the Chancellor on the plea constituted a waiver by defendant, and should prevent our considering the plea on review. Rule 14, *supra; Wright v. Nashville Gas & Heating Co.,* 183 Tenn. 594, 194 S. W. 2d 459; *Stegall v. City of Chattanooga,* 16 Tenn. App. 124, 66 S. W. 2d 266; *Carson v. Peterson,* 105 Tenn. 541, 545, 58 S. W. 1060. However, we think the plea is without merit because the parties and nature of the suit are not identical, and the Chancery decree of 1937 was rendered prior to the enactment of the amendment of 1939, and the ''healing arts'' Act of 1947, upon which the present decision of the Chancellor was based.

All assignments of error are overruled and the decree below is affirmed at appellant's cost. The case is remanded to the Chancery Court for such further proceedings as may be necessary to effectuate the decree.

All concur.