15837

MOORE *ET AL.* v. DEW *ET AL.*

(38 S. E. (2d), 258)

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, and *Herbert Britt,* of Dillon, for appellants-respondents,

*Messrs. Tison & Miller,* of Bennettsville, and *Gibson & Muller,* of Dillon, for respondents-appellants,

May 13, 1946.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous Opinion of the Court.

The following Complaint together with Summons was served on the defendants on July 24th, 1945.

"The plaintiffs, complaining of the defendants, allege:

"1. That John W. Moore and John W. Moore, Jr., are partners, engaged in the running of a tobacco warehouse in the Town of Dillon under the firm name and style of Moore Warehouse; that A. V. Bethea and H. G. Clark are partners running a tobacco auction sales warehouse in the Town of Dillon under the firm name and style of Farmers Warehouse; that the Farmers Warehouse Company is a

corporation duly chartered and organized under the laws of the State of South Carolina.

"2. That the defendant, D. M. Dew, Jr., is building and has almost completed a warehouse in the Town of Dillon for which he got priorities according to his application, for the purpose of building a tent factory for D. W. Rippetoe and Company who manufacture tents for the United States Government; that the said D. M. Dew, Jr., and J. T. Squires, have owned and operated for a number of years, another warehouse in the Town of Dillon for the sale of tobacco at auction which they operated under the firm name and style of Pee Dee Warehouse.

"3. That the Dillon Tobacco Market is a comparatively small market and is allotted by the Tobacco Companies only one set of buyers; that the Federal Government for purposes satisfactory to it, regulates the sales of tobacco in all of the tobacco markets and in Dillon, with its one set of buyers allows sales to continue five days a week for only three and a half hours a day, and does not permit the sale of more than three to four hundred baskets of tobacco an hour.

"4. That the plaintiff, the Farmers Warehouse Company, has a large investment in a brick warehouse costing around forty thousand dollars; that other warehouses in the said town have large investments and they together with the public are vitally interested in maintaining an active and efficient market in Dillon, as well as the plaintiffs partnerships, who operate under the firm names and styles above mentioned; that plaintiffs are informed and believe, their information being derived by statements from the War Production Board officials, namely, Mr. T. K. LeGare, who is Area Director in the City of Columbia, from Mr. Gadsden E. Shand, Jr., who is District Production Manager, and from one or two other officials of the War Production Board, that the said defendants were given priorities for obtaining steel, brick and other materials for building the new warehouse only because of the fact that it was to be

used as a tent factory for the Government; that they are further informed and believe, said information being derived from the same officials, that under the regulations of the United States Government and War Production management, that the defendants have no right or authority to use the said warehouse for any other purpose than for the construction of tents, certainly so long as the war continues and the Government requires the manufacture of tents. That plaintiffs having been informed many months again and shortly after the application for priorities made by defendants, that it might be used for a tobacco warehouse, went to Columbia and were assured by the said officials, that the defendants would have the right to use the warehouse only for tent purposes; that plaintiffs made application for steel and other materials necessary to build additional warehouses for themselves but said War Production Board officials again assured them that the Dew priorities were not for tobacco warehouse and could not under the regulations be granted for that purpose, and their applications were refused.

"5. That notwithstanding such regulations and such declarations on the part of the officials of the War Production Board the said D. M. Dew, Jr., and J. T. Squires allege, insist and are threatening, to use the said new warehouse for the sale of tobacco at auction; that today, July 23, 1945, a meeting of the tobacco warehousemen was held in the Town of Dillon and the said D. M. Dew, Jr., and J. T. Squires both stated positively that the warehouse would be so used and refused to join in the making of a schedule for tobacco sales unless the said new warehouse was given its opportunity and time of sales; that it is the general custom and a necessity before the market opens that the warehousemen agree upon a schedule of sales and draw lots as to who shall have the first sales; that in addition to this, the said D. M. Dew, Jr., and J. T. Squires have had signs painted advertising to the public that tobacco auction sales will be held at their new warehouse on Main Street and have purchased a number of baskets to handle tobacco marking them Main Street Tobacco Warehouse, or words to that effect.

"6. Because of the fact that the defendants, or at least the said D. M. Dew, Jr., obtained his priorities for building the warehouse under statements that it was to be used as a tent factory and because of the fact that when plaintiffs made applications in good faith to be allowed to build additional warehouses, should the said D. M. Dew, Jr., and J. T. Squires be permitted to operate the new warehouse as a tobacco warehouse, the property of plaintiffs and their businesses will be irreparably damaged; that they have no adequate remedy at law for the reason there would be no means by which the plaintiffs could arrive at their damages in a suit at law against the defendants; that the acts of the said D. M. Dew, Jr., in obtaining priorities for a warehouse alleged to be used for a tent factory, when he was planning to use the same, or is now planning to use the same for a tobacco auction sales warehouse, not only amounts to fraud and deceit, not only where the government is concerned, but directly affects the rights of plaintiffs, that should the said warehouse be operated as a tobacco warehouse and the said D. M. Dew, Jr., and J. T. Squires be permitted to monopolize one-half of the time of the buyers, because the division of time is based upon warehouse floor space, they would thus obtain through fraud and deceit a great advantage over the plaintiffs in selling tobacco and would severely damage them in their business, as well as largely disrupt the tobacco market of Dillon.

"WHEREFORE PLAINTIFFS PRAY:

"1st. That the defendants, D. M. Dew, Jr., and J. T. Squires, be restrained and enjoined from using the said warehouse as a warehouse for the auction sales of tobacco pending the hearing of the cause on its merits and that an injunction be granted plaintiffs so restraining and enjoining said defendants;

"2nd. And for such other and further relief as is proper, together with the costs and disbursements of this action."

The defendants, by way of reply and answer, challenged the right of the plaintiffs to maintain the action, in that they

were seeking to assert certain supposed rights of the War Production Board, an agency of the United States, for which they had no authority to act, and were seeking to restrain the defendant, D. M. Dew, Jr., from using his own premises for lawful business operations.

Upon a four-day notice, heard by Honorable E. C. Dennis, Judge of the Fourth Circuit, on July 28th, 1945, an injunction *pendente lite* was granted.

Defendants forthwith gave notice of appeal from the order granting injunction *pendente lite,* filed a certified copy of notice of appeal, with proof of service thereon, in the office of the Clerk of the Supreme Court, and applied to a member of this Court for an order of supersedeas. Counsel for the respective parties appeared on July 31, 1945, and were fully heard on the question of whether a supersedeas should be granted. On August 8th, 1945, an order was passed superseding Judge Dennis' order granting the injunction *pendente lite,* and fixing supersedeas bond in the amount of $5,000.00. From this order, plaintiffs gave due notice of intention to appeal to this Court.

The fundamental issue on these appeals, therefore, is whether or not the facts stated in the complaint entitled the plaintiffs to injunctive relief.

The regulations of the War Production Board were introduced in evidence, the relevant portions being:

"Any person who gets material with priorities assistance, must, if possible, use or dispose of it (or of the product into which it has been incorporated) for the purpose for which the assistance was given." Sec. 944-11.

"Any person who violates any provision of this regulation or any other rule, regulation or order of the War Production Board, or who, by any statement or omission willfully fasifies any records which he is required to keep, or who otherwise willfully furnishes false or misleading information to the War Production Board, and any person who obtains a delivery, an allocation of material or facilities, or a preference rating by means of a material and will-

ful, false or misleading statement, may be prohibited by the War Production Board from making or obtaining further deliveries of material or using facilities under priority of allocation control and may be deprived of further priorities assistance. The War Production Board may also take any other action deemed appropriate, including the making of a recommendation, for prosecution under section 35(A) of the Criminal Code (18 U. S. C., Sec. 80), or under the Second War Powers Act (Public No. 507, 77th Congress, March 27, 1942)." Sec. 944-18.

The War Production Board, established by Executive Order of the President, was given general authority over the war procurement and production program, including operating, contracting specifications, construction, etc., and the following powers were delegated to the chairman of the board:

"The chairman may exercise the powers, authority and discretion conferred upon him by this order through such officials and agents and in such manner as he may determine; and his decision shall be final." Executive Order No. 9024, U. S. Code Congressional Service 1942, No. 1, p. 50.

The selling of tobacco is, of course, a legitimate enterprise, but plaintiffs complain that the materials which went into the construction of the building were obtained on priorities of the War Production Board, under representations that the building would be used for another purpose, and that this constituted in effect a contract between the defendants and the War Production Board for the benefit of the plaintiffs. No relation exists between plaintiffs and defendants except that they are competitors in a legitimate business. The defendants obtained materials under regulations of the War Production Board, which was created by executive order and given general authority over the war procurement and production program, including constructions, contracting, etc. Only the Chairman of the War Production Board, or such agencies as he should designate, has jurisdiction to prevent the violation of any regulation of the

Board. It does not follow that a contract for the benefit of plaintiffs existed between the War Production Board and the defendants merely because they obtained materials under priorities issued by the Board. On the contrary, however, this Court finds that no such contract did exist.

Plaintiffs contend that they have stated a cause of action for fraud and deceit. To do so the following elements must be present: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. 26 C. J., Sec. 6, p. 1062.

It is not even contended that Dew made any representations to plaintiffs, and they did nothing in reliance upon any statements by him, therefore the elements of fraud are absent, unless it can be said that the War Production Board itself was defrauded. If so, the duty is devolved upon its Chairman, or his designated agent, to act. See Executive Order No. 9024, *supra*.

In the case of *McMaster v. Ford Motor Co.*, 122 S. C., 244, 115 S. E., 244, we find:

"While equitable, as well as legal rights are entitled to the protection of equity by injunction if the case is otherwise a proper one for such relief, the existence of a right violated is a prerequisite to the granting of an injunction. Where it is clear that the complainant does not have the right that he claims, he is not entitled to injunction, either temporary or perpetual, to prevent a violation of such supposed right. . . . An injunction will not issue to protect a right not in esse and which may never arise or to restrain an act which does not give rise to a cause of action, *or to prevent the perpetration of an act prohibited by statute in favor of one who urges as his only ground for relief the diminution of the profits of a trade or business pursued by complainant* in common with others." (Italics ours.)

Respondents cite the case of *Ezell, et al. v. Ritholz, et al.,* 186 S. C., 39, 198 S. E., 419, as authority to maintain this action. However, the facts there are quite different from the instant case, in that the Optometry Board was charged with the duty of regulating the practice of optometry, while here the regulatory duties are placed upon the Chairman of the War Production Board, who may exercise the powers, authority and discretion conferred upon him through such officials and agents, and in such manner as he may determine. In addition, the subject dealt with in that case is one intimately affecting .the health and welfare of the public, and not a matter of common business activity.

Having reached the conclusion that the plaintiffs have no cause of action for the matters set forth in the complaint, it follows that the temporary injunction was improvidently granted and all exceptions relating to other issues are moot and need not be considered.

The only other question to be disposed of is the motion of the defendants for an order declaring the questions at issue upon the appeal to be moot, and dismissing the complaint. The motion is granted to the extent that it is consistent with the foregoing conclusions.

The exceptions of appellants-respondents, defendants below, are sustained, and Judge Dennis' order granting injunction *pendente lite* reversed; the exceptions of respondents-appellants, plaintiffs below, are overruled, and the complaint is dismissed.

MESSRS. ASSOCIATE JUSTICES STUKES and OXNER and MESSRS. ACTING ASSOCIATE JUTICES J. HENRY JOHNSON and G. DUNCAN BELLINGER concur.