LIQUOR TRANSPORTATION CASES. HARRISON KIZER *v.*
STATE. ARTHUR HALL *v.* SAME.

(*Jackson.* April Term, 1918.)

1. **STATUTES.** Title. Construction.

Constitution 1870, article 2, section 17, providing that no bill
shall become a law which embraces more than one subject to
be expressed in the title, should be liberally construed. (*Post,
p.* 588.)

Acts cited and construed: Acts 1917, ch. 12.

Cases cited and approved: Railroad v. Crider, 91 Tenn., 489;
Railroad v. Byrne, 119 Tenn., 287.

Constitution cited and construed: Art. 2, sec. 17 (1870).

2. **CONSTITUTIONAL LAW.** Titles of statutes. Construction.

The rule that every intendment is in favor of the constitution-
ality of a statute, and that every doubt must be solved in its
favor, is applicable in the interpretation of titles. (*Post, pp.*
588, 589.)

Cases cited and approved: Truss v. State, 81 Tenn., 213; Rail-
road v. Byrne, 119 Tenn., 287.

3. **STATUTES.** Titles. Construction. ''Subject.'' ''Provision.''

Where different provisions of the title and· statute refer directly
to a single subject and have a connection with and are not
foreign to that subject and are not unrelated to one another,
there is no violation of Constitution 1870, article 2, section 17,
relating to titles of statutes; "subject" not being synonymous
with "provision." (*Post, pp.* 589-591.)

Cases cited and approved: State ex rel. v. Fickle, 71 Tenn., 79;
State v. McMinnville, 106 Tenn., 384; Samuelson v. State, 116
Tenn., 470; State v. Cumberland Club, 136 Tenn., 84; School
Dist. v. Hall, 113 U. S., 135; James Clark Distilling Co. v.
Western Maryland R. Co., 242 U. S., 311.

Kizer v. State.

Cases cited and distinguished: State v. Brown, 103 Tenn., 449; Montclair v. Ramsdell, 107 U. S., 147.

Constitution cited and construed: Art. 2, sec. 17 (1870).

4. **STATUTES. Title.**

The object of Acts 1917, chapter 12, being to make more effective the prohibition laws of the State, it is not unconstitutional as violating Constitution 1870, article 2, section 17, relating to titles of statutes. (*Post, pp.* 591, 592.)

Case cited and distinguished: Crane v. Campbell, 245 U. S., 304.

5. **CONSTITUTIONAL LAW. Intoxicating liquors. Law of the land. Transportation of liquor. Statutes.**

Acts 1917, chapter 12, section 4, relating to transportation by a person of intoxicating liquors intended for his own use, is not in violation of Constitution article 1, section 8, providing that no person shall be disseized of his liberty or privileges otherwise than by the law of the land. (*Post, pp.* 592, 593.)

Acts cited and construed: Acts 1917, ch. 12, sec. 4.

Constitution cited and construed: Art. 1, sec. 8.

6. **INTOXICATING LIQUORS. Transportation. Statutes.**

Acts 1917, chapter 12, section 4, does not confine the personal transportation into the State or between points within the State of intoxicating liquor to liquors which have been received from a common or other carrier. (*Post, p.* 593.)

Case cited and approved: Palmer v. Express Co., 129 Tenn., 116.

7. **INTOXICATING LIQUORS. Transportation. Statutes. ''From one point to another.''**

Acts 1917, chapter 12, section 4, forbidding the transportation of intoxicating liquor into the State or from one point to another within the State, contemplates nothing less than the transporting from one premise to another and does not forbid a movement of liquors by a person within the limits of his own premises or in his own house. (*Post, pp.* 593-595.)

Case cited and approved: State v. Rhodes, 90 Iowa, 496.

Case cited and distinguished: Com. v. Waters, 77 Mass., 81.

8. **INTOXICATING LIQUORS. Transportation. Statutes. "Common or other carrier."**

Acts 1917, chapter 12, making it unlawful to receive intoxicating liquors from a common or other carrier or to possess liquors so received, is not confined to carriers for hire, but was intended to cover every phase of the handling of intoxicants except as otherwise indicated in the statute. (*Post, pp.* 595, 596.)

Case cited and approved: Hendry v. State, 93 S. E., 413.

9. **INTOXICATING LIQUORS. Transportation. Statutes. Sacramental wines.**

Under Acts 1917, chapter 12, section 5, subsection 1, making it lawful for any common carrier or other carrier to transport wines for sacramental purposes to any priest or minister, a sexton of a church or communicant may convey either for or without hire wine to the priest or minister. (*Post, pp.* 596, 597 )

10. **INTOXICATING LIQUORS. Transportation. Statutes. "Personal use."**

Acts 1917, chapter 12, section 4, forbidding the transportation of intoxicating liquors, includes transportation for the personal use of the transporter; the words "personal use" referring to the individual carrying the liquor. (*Post, pp.* 597-599.)

Acts cited and construed: Acts 1917, ch. 12, sec. 4, 5.

Case cited and approved: Bird v. State, 131 Tenn., 518.

11. **INDICTMENT AND INFORMATION. Duplicity. Transportation of liquor.**

In a prosecution for transporting intoxicating liquors in violation of Acts 1917, chapter 12, section 4, a presentment that accused "did transport into the State, . . . and from some point in said State unknown to the grand jurors to or near M.," a certain quantity of intoxicating liquor, was not bad; it being permissible to charge accused in the same count conjunctively with transporting whisky into the State and from one point to another within the State in view of Thompson's-Shannon's Code, section 7084, this being but a single transaction. (*Post, p.* 599.)

Kizer v. State.

Case cited and approved: Griffin v. State, 109 Tenn., 17:

Code cited and construed: Sec. 7084 (T.-S.).

12. **INDICTMENT AND INFORMATION.** Matters unknown to grand jury.

A presentment under Acts 1917, chapter 12, section 4, need not specify the place where the transportation began when such place is unknown to the grand jurors. (*Post, pp.* 599, 600.)

Cases cited and approved: State v. Ferriss, 71 Tenn., 701; State v. Kelly, 138 Tenn., 84; Com. v. Hutchinson, 6 Allen (Mass.), 595.

13. **INTOXICATING LIQUORS.** Transportation. Indictment.

A presentment for transporting intoxicating liquor in violation of Acts 1917, chapter 12, section 4, is not bad because it omits the word "personally" in describing the transporting in view of Thompson's-Shannon's Code, section 7080, and Acts 1911, chapter 32. (*Post, p.* 600.)

Acts cited and construed: Acts 1911, ch. 32; Acts 1917, ch. 12, sec. 4.

Code cited and construed: Sec. 7080.

14. **INTOXICATING LIQUORS.** "Transportation."

A carrying of intoxicating liquors from a train to the depot platform is a "transportation" within Acts 1917, chapter 12, section 4. (*Post, pp.* 600, 601.)

---

FROM CARROLL AND TIPTON.

---

Appeal from the Circuit Court of Carroll County. —Hon. Thos. E. Harwood, Judge.

Appeal from the Criminal Court of Tipton County. —Hon. S. E. Stephenson, Judge.

P. W. Maddox, for plaintiff Kizer.

JOHN W. TIPTON, for plaintiff Hall.

W. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

A number of appeals to this court, at the present term, involve attacks upon the constitutionality of Acts 1917, chapter 12, and the proper construction of the act if held to be constitutional. Two of these raise questions which make necessary a somewhat comprehensive survey of the act.

I. Contentions common to the causes:

The act, so far as pertinent to the determination of the issues, is as follows:

"An act prohibiting the receipt of intoxicating liquors from a common or other carrier, prohibiting the possession of such liquors hereafter received from a common carrier, or other carrier, and prohibiting the shipment and personal transportation of such liquors into this State, or between points within this State, whether intended for personal use or otherwise.

"Sec. 1. Be it enacted by the general assembly of the State of Tennessee, that it shall be unlawful for any person, firm or corporation to receive, directly or indirectly, intoxicating liquors including wine, ale and beer, from a common, or other carrier, in this State, whether intended for personal use,

or otherwise, and whether interstate or intrastate shipments or transportation.

"Sec. 2. Be it further enacted, that it shall be unlawful for any person, firm or corporation to possess intoxicating liquors, including wine, ale and beer, hereafter received, directly or indirectly, from a common or other carrier in this State, whether intended for personal use or otherwise, and whether interstate or intrastate shipments or transportation.

"Sec. 3. Be it further enacted, that it shall be unlawful for any express company, railroad company, or any common carrier or person to ship or transport into this State or from one place to another within this State, intoxicating liquors, including wine, ale and beer, for any person, firm or corporation, whether in original packages or otherwise and whether intended for personal use or otherwise.

"Sec. 4. Be it further enacted that it shall be unlawful for any person to personally transport into this State or from one point to another within this State, even when intended for personal use, intoxicating liquors, including wine, ale and beer, in any quantity whatever."

Subsequent sections deal with exceptions, such as legality of deliveries to any priest or minister of wine for sacramental purposes, etc.

(a) Is the act violative of article 2, section 17, of the Constitution of 1870, which provides that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title?

The well-settled rule is that this provision of the Constitution should be construed liberally, otherwise it would operate to embarrass legislation without advancing the beneficial purposes intended, which were to prevent combinations of incongruous subjects in one bill, with the object of drawing to the support of the whole bill members who might wish to support but a part (*Railroad* v. *Crider,* 91 Tenn., 489, 19 S. W., 618), and to prevent surprise or fraud in legislation, by having matter of one nature embraced in a bill whose title expressed another (*Railroad* v. *Byrne,* 119 Tenn., 287, 304, 104 S. W., 460).

The rule of construction that every intendment is in favor of the constitutionality of a statute, and that every doubt must be solved in its favor, is applicable in the interpretation of titles. *Railroad* v. *Byrne,* supra.

What is the import of the words "that subject expressed" in this constitutional provision? Must the subject be set forth in express words of unity, or is it sufficient if the singleness of the object or subject may be gathered from the language of the title?

Cooley, in Constitutional Limitations (173), says that the general purpose of the constitutional provision is accomplished when a law has but one general object, which is "fairly indicated" by its title, and our cases have cited this statement with approval.

"Whatever is of sufficient import to direct the mind to the subjects of proposed legislation meets

the object of the Constitution." *Truss* v. *State*, 13 Lea (81 Tenn.), 213; *Railroad* v. *Byrne*, supra.

"Subject" is not synonymous with "provision" and, where different provisions of the title and statute refer directly to the single subject and have a connection with and are not foreign to that subject and are not unrelated to one another, there is no violation of the constitutional provision. Plurality of the title is not an objection when the several plural provisions deal with, and by necessary construction are but, constituent parts of one subject. That construction may be resorted to to determine the singleness of the object or subject is demonstrable from our decisions.

In *State* v. *Brown*, 103 Tenn., 449, 53 S. W., 727, it appeared that the title and the act under test purported to raise the age of consent to twelve years, and to prescribe punishment in the penitentiary for persons having carnal knowledge of females over twelve and under sixteen years of age; and the court held, on construction:

"In reality, the subject is single, and the two purposes indicated relate to different parts of that one subject, which is the prevention and punishment of carnal connection with young females. This subject, though not formulated in the language we have employed, is clearly expressed in the title when reduced to its shortest meaning and read in connection with the law amended, and such a title, though sufficiently broad in its scope to include two or more different

grades or classes of crimes, is nevertheless single, and expresses but one subject. . . . Nor does it militate against the validity of the statute to say that it treats different offenses and prescribes different punishments for them."

For other cases illustrating the rule, see *State ex rel. Morrell* v. *Fickle,* 3 Lea (71 Tenn.), 79; *State* v. *McMinnville,* 106 Tenn., 384, 61 S. W., 785; *Samuelson* v. *State,* 116 Tenn., 470, 95 S. W., 1012, 115 Am. St. Rep., 805; *State* v. *Cumberland Club,* 136 Tenn., 84, 94, 188 S. W., 583.

In *Montclair* v. *Ramsdell,* 107 U. S., 147, 2 Sup. Ct., 391, 27 L. Ed., 431, it was said:

"It is not intended to prohibit the uniting in one bill of any number of provisions having one general object fairly indicated by its title. The unity of the object must be sought in the end which the legislative act proposes to accomplish."

The unity of the subject is to be looked for in the ultimate object of the statute; it cannot with reason be held that each step towards the accomplishment of an end or object should be embodied in a separate act, and so long as the steps are of the same general nature and legitimately parts of one system, end, or object, the act is constitutional. *School Dist.* v. *Hall,* 113 U. S., 135, 5 Sup. Ct., 371, 28 L. Ed., 955.

Coming to a consideration of the act before us: We think it manifest that the statute was passed in the light of the decision of the supreme court of the United States in the case of *James Clark Dis-*

*tilling Co.* v. *Western Maryland R. Co.*, 242 U. S., 311, 37 Sup. Ct., 180, 61 L. Ed., 326, L. R. A., 1917B, 1218, Ann. Cas., 1917B, 845, upholding the effectiveness of the statute of West Virginia as supplemented by the act of Congress known as the Webb-Kenyon Law. That opinion was handed down on January 8, 1917, and this act was passed February 1, 1917. The object of the act, several features of which were formulated after the West Virginia act as a model, was to make more effective prohibition in this State, so far as might be as was disclosed by the opinion in the James Clark Distilling Co. Case. That opinion removed previous doubts as to the reach and effect of the Webb-Kenyon Law (Act March 1, 1913, chapter 90, 37 Stat. 699 [U. S. Comp. St. 1916, section 8739]), under the national Constitution.

We are of opinion, therefore, that the real object and subject of the act in question may, by construction, be stated to be: An act to make more effective the prohibition laws of this State. The several steps or provisions of the act relate directly to that subject, and have relation one to the other as parts of a system of regulation of the movement, delivery, and possession of intoxicating liquors. The act is therefore not to be denounced as unconstitutional on the ground above stated.

(b) The supreme court of the United States, in the Clark Distilling Co. Case, distinctly held that a State may, consistently with the due process clause of the National Constitution, Amendment 14, forbid

all shipments of intoxicating liquors, whether intended for personal use or otherwise; and in the later case of *Crane* v. *Campbell*, 245 U. S., 304, 38 Sup. Ct., 98, 62 L. Ed., —— decided December 10, 1917), that court upheld the validity of a State statute which manifested a further reach of power than is here involved, saying:

"It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a State has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guaranty of the Fourteenth Amendment. (Citing cases.)

"As the State has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. (Citing cases.) And, considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors, we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose."

We hold that, for the same reasons, article 1, section 8, of our Constitution, is not violated by the provisions of section 4 of the Act of 1917 touching transportation by a person of intoxicating liquors intended for his own use. Such person is not thereby disseised of

Kizer v. State.

his liberties or privileges otherwise than by "the law of the land."

(c) As to the construction of the act under review:

It is urged that personal transportation into this State, or between points within this State, denounced in the fourth section of the act, must be confined to intoxicating liquors which have been received from a common or other carrier, because, it is said, the word "such" in the third clause of the title refers, not to liquors, but to "liquors which have been received from a carrier." We think it manifest that the reference of the word "such" throughout the entire title is to the single word "liquors." Instead of repeating the first adjective "intoxicating," the word "such" is used. This is the plain grammatical construction; but, if the contrary were true, it would be our duty to disregard the rules of grammar, if there be room for more than one interpretation, in order to harmonize the title with all the provisions of the act and uphold the legislative intent demonstrated in the body of the act. *Palmer* v. *Express Co.,* 129 Tenn., 116, 158, 165 S. W., 236.

The proposition is advanced that the phrases "from one place to another" and "from one point to another," appearing in the act, do not include a carrying from one point (depot) to another (fair grounds) in a given town; the argument being that a strict contrary construction would lead to the absurdity of punishing one for a movement of liquors by a person within the limits of his own premises or in

his own house. We hold that the two phrases are synonymous, and that each means not less than a transporting from one premises to another; or, for example, the movement of intoxicating liquors from distinct points, as from a railway car to the depot grounds, or, perhaps, from such grounds into the depot. *State* v. *Rhodes,* 90 Iowa, 496, 58 N. W., 887, 24 L. R. A., 245.

In *Com.* v. *Waters,* 77 Mass. (11 Gray), 81, 84, it was held in respect of a similar statutory provision in that State:

" 'From place to place,' as used in Statutes 1855, chapter 215, section 20, prohibiting the transportation of spirituous liquors from place to place in the State, does not mean only from towns or counties, or such other territorial divisions or districts as have been or may be established by a law or by authority of the commonwealth. It is not every possible removal of spirituous liquors which comes within the statute. If the removal were only on the premises of the owner, or from one to another of his warehouses, or from one to another part of his shop, it would not be from place to place within the meaning of the statute; but the transportation from one place, whether it be a shop, warehouse, railroad depot, or building used for any purpose whatever, of which the owner has no possession and in which he has no interest, to a store of his own in which he transacts his usual business, is a thing altogether different in itself, and is a transportation from place to place."

Each case in this regard, should be decided on its particular facts, on consideration of their shading. .

It is next contended that the phrase "common or other carrier," in the first and second sections of the act, means a carrier for hire; and that the idea of liability of one who carries not for hire is excluded. The argument would assign a technical meaning to the word "carrier," confining it to common or public carriers, and to private carriers for hire.

It may be that in the law of bailments there are but two kinds of carriers, common and private, each being a carrier for hire; but the legislature was not concerned with the regulation of any phase of the law of bailments, but with the further suppression of the liquor traffic. It did not intend to prevent movements of liquors by "carriers for hire" only. *Hendry* v. *State* (Ga.), 93 S. E., 413. If so, that expression would have more clearly conveyed the idea, and, too, in fewer words. Knowing the evil practices of the bootlegger in the distribution of intoxicating liquors and his ingenuity and resourcefulness, it was not the purpose of the legislature in passing the act to leave him free to ply his trade, or to put the prosecution to the burden of showing, in a given case, that he was technically a private carrier or carried for profit or hire. This construction the better harmonizes with the other sections, as the assistant attorney-general points out in his brief, in this:

(1) If the phrase "other carrier" means carrier for hire, then a receiving of intoxicating liquors trans-

ported by a person not for hire is lawful, while under section 3 that very act of transporting from one point to another for delivery to such a receiver is denounced. We think the intention was not to punish the taking of the one step and leave the other not punishable. The act manifests a studied purpose to cover every phase of the handling of intoxicants, except as herein otherwise indicated.

(2) In subsection 1 of section 5 it is provided it shall be lawful for any common, "or other carrier," to transport wines for sacramental purposes to any priest or minister. May not a sexton of a church or communicant, as such "other carrier" convey, either for or without hire wine to the priest or minister and not be guiltless of an offense? Clearly he may.

We think that without doubt the West Virginia act, so upheld by the supreme court of the United States, as well as that decision, was before the draftsman of the act here under consideration. That act prohibited carrying by a person "for hire or without hire," and we are persuaded that it was not the intent of our legislature to make the act of 1917 less drastic in that respect.

II. Questions peculiar to the respective causes, on appeal:

## KIZER *v.* STATE.

Kizer was indicted for unlawfully transporting intoxicating liquor from one point to another in Car-

Kizer v. State.

roll county. No question was raised as to the sufficiency of the indictment.

The essential facts upon which the conviction is based appear in the agreed statements of facts as follows: That. the defendant purchased a pint of whisky from an unknown party near the depot in the town of Huntingdon, at the time alleged in the indictment, and that, after having bought the liquor, the defendant went to the fair grounds of the colored people, about a mile from the place where he bought the whisky, carrying the whisky with him.

The act of carrying the whisky from one point to another is made unlawful, as the State insists, by the provisions of section 4, Acts of 1917, above quoted.

The contention of plaintiff in error on this appeal is that the act is directed at the suppression of transportation of such liquors as are intended for sale, and that transportation for the personal use of the transporter is not denounced.

The argument runs counter to the plain language of section 4, which makes it unlawful for any one to personally transport from one point to another within this State, even when intended for personal use. It cannot be maintained that the personal use thus specified is that of another person than the carrier. The word "personal" in the phrase "personal use" refers to the individual carrying the whisky recited in the preceding phrase "personally transport." The same word twice used in the same act will, nothing else

appearing, be given the same meaning. The rule of construction is but more manifestly to be applied where the word is repeated in the same section of a statute, as here.

Further, the legislative intent in passing the act was to prevent drunkenness which is produced by the personal use of intoxicating liquors as a beverage, with the view to protecting society from crime and pauperism, and the financial burdens incident thereto. These ends are sought to be compassed, not by declaring the personal use of such liquors illegal, but by inhibiting movements thereof, the tendency of which is to make easy that use.

In *Bird* v. *State,* 131 Tenn., 518, 175 S. W., 554, Ann. Cas., 1917A, 634, the Acts of 1913 (2d Ex. Session), chapters 1 and 3, in relation to transportation of intoxicating liquors, were under consideration. It was held that these statutes had no application to personal transportation for one's own use, since delivery to another was expressed in the one and implied in the other. The act under review was intended to be an advanced step, and, its language being unambiguous, it is our duty to enforce the statute as it is written.

Chief Justice WHITE, in construing the West Virginia act in this regard, in the *Clark Distilling Co. Case,* supra, said that the statute as amended "leaves no room for doubt that it does forbid all shipments, whether for personal use or otherwise, and whether from within or without the State;" and at another

place he refers to "movements" of liquors as being the thing prohibited by the State statute.

### HALL v. STATE.

The presentment in this case, omitting formal parts, is as follows:

"Arthur Hall . . . did transport into the State of Tennessee, and from some point in said State unknown to the grand jurors aforesaid, to or near Melrose, in said county, a certain quality of intoxicating liquors, to-wit, 12 quarts of whisky."

(a) The first contention of plaintiff in error is that two distinct offenses are set forth, but neither adequately. It is obvious from its language that the presentment described but a single continuous transaction or transportation, and it was permissible for the pleader to charge Hall in the same count, conjunctively, with transporting whisky into the State and from one point to another within the State. Thompson's Shannon's Code, section 7084; *Griffin* v. *State,* 109 Tenn., 17, 22, 70 S. W., 61, and cases there cited; Wharton, Cr. Pl. & Pr. (9 Ed.), sections 243, 251.

(b) It is urged that the presentment is defective in that it fails to specify the place where the transportation began as well as the place to which the whisky was transported. When the place where the transportation began is unknown to the grand jurors, it is allowable for them in the presentment to so state. In *State* v. *Ferriss,* 3 Lea (71 Tenn.), 701, it was said that, if a particular fact which is a matter of

description and not vital to the accusation cannot be ascertained, the presentment may charge such fact to be unknown to the grand jury. See, also, *State v. Kelly*, 138 Tenn., 84, 195 S. W., 1126; *Com. v. Hutchinson*, 6 Allen (Mass.), 595. It is apparent that, were the rule otherwise, the prosecution would be under a serious handicap in making out a case against misdemeanants—the imposition of a burden which we hold to be unwarranted.

(c) Another proposition of plaintiff in error is that the presentment should have been quashed, because, as it is based on section 4 of the act, it omits the word "personally" in describing the transporting. The pleader would have done well to use the statutory phrase "personally transport," but we are of opinion the presentment was not improperly sustained.

We have held at this term that the statute does not make it an offense for one to procure liquor to be transported by another for himself, so far as the act of transportation is concerned. The idea of personal carriage is conveyed by the words "to transport" when one's thus acting through another's agency is excluded. The presentment is sufficient under Thompson's Shannon's Code, section 7080, and Acts 1911, chapter 32.

(d) The next assignment of error makes a statement of the facts necessary. These are few, only one witness having testified on the trial. Melrose is a railway station four miles south of Covington. The

witness heard the train in question pull out of Covington, and when, without stopping between stations, it stopped at Melrose, Hall left the train with two sacks which contained several quarts of whisky. After he had proceeded a short distance from the train he was arrested.

The trial judge charged the jury in the following language:

"If you are satisfied from the proof beyond a reasonable doubt that the defendant stepped off of a train with whisky in his possession, he would be guilty."

The jurors could not have failed to understand that the train described by the State's witness was the one to be considered by them. As may be seen by what has already been said, this charge was not erroneous; the facts not being in dispute. A carrying from such a train to the depot platform is a "transportation" within the meaning of the statute. Affirmance in each case results.