COSMOPOLITAN LIFE INSURANCE COMPANY

*v.*

ARCH E. NORTHINGTON, Commissioner of Insurance and Banking of the State of Tennessee and

GEORGE F. McCANLESS, Attorney General of the State of Tennessee.

(*Nashville,* December Term, 1956)

Opinion filed February 8, 1957.

Rehearing Denied April 1, 1957.

Taylor, Costen & Taylor, Memphis, Denny & Leftwich, Nashville, for appellant.

Jack Wilson, Assistant Attorney General, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

This suit was brought by the Insurance Company under the Declaratory Judgments Act statutes, Sec. 23-1101 et seq., T.C.A., for the purpose of declaring Chapter 195 of the Public Acts of 1955 unconstitutional.

The Chancellor, after the original bill had been amended and supplemented, sustained demurrers and held that the Act was constitutional. This appeal resulted. We have heard argument, had briefs filed, read the authorities and given considerable thought to the matter and are now ready for a determination of the questions involved.

Chapter 195 of the Public Acts of 1955 is entitled or captioned, "An Act to regulate burial insurance and to provide penalties for violation thereof." This Act originated in the Senate as Senate Bill No. 336. The Senate Journal for 1955 shows the various steps that were taken to enact this bill into law and among the others on page 597 of the Senate Journal this appears:

"Insurance and Banking

"Mr. Speaker: Your Committee on Insurance and Banking begs leave to report that we have carefully considered and recommend Senate Bill No. 336, for passage.

"Eslick, Chairman."

In a concise manner the Act attempts to separate life insurance business from undertaking business by requiring life insurance companies to pay beneficiaries under their policies in money instead of in funeral merchandise and services. The Act is thus prohibitory in that it prohibits life insurance companies from contracting with particular undertaking establishments to bury the insureds' of the company.

In the final analysis the bill in this case alleges that this Act is in violation of Article 2, of Section 17 of our Constitution; in violation of "the provisions of Section 1 of the Fourteenth Amendment of the Constitution of the United States;" it violates "the provisions of Article 1, Section 8 of the Constitution of the State of Tennessee;" and that the Act is in violation of "the provisions of Article 11, Section 8, of the Constitution of the State of Tennessee." We will consider each of these questions separately and attempt to arrive at what we consider a correct answer thereto.

The bill as it finally reaches us alleges among other things that the burial insurance business was a perfectly lawful business and resulted in a great benefit to the public in general; that the business was inoffensive to public safety, health and morals of the citizens of the State; that burial insurance companies and associations are today and were prior to the enactment of the Act in question providing funds for respectable burial for literally thousands of people who for nearly a half a century would have been charges upon the community and would have been buried in Potter's Fields, had it not been for such burial insurance companies; that the citizens of the State have been placed in an advantageous position of being able to contract for their funeral and disposition of their bodies at a fraction of the cost of the services otherwise. It is further alleged that the cost of an $800 funeral, if purchased by a 20 year payment burial insurance policy, is 37c per week at the age of 35. It is also shown that under the form policy issued by this company, which is attached as exhibit hereto, that if the insured dies within a 20 year period the service costs him the amount paid by his weekly premiums. It is also shown that if he lives past the 20 year payment period that the maximum cost of this $800 funeral for him is only $384.80. It is also shown that the survivors of the insured have the option of either taking the funeral as contracted for in the policy or a cash payment as provided in the policy.

The bill also alleges that prior to the burial insurance business that no one but wealthy people could get a respectable burial and that the general attitude of most undertakers was "to get every penny that the traffic would bear"; that this fact was brought about by the

fact that many undertakers were unable to collect their bills for the services of burying a dead person and that a lot of times a person could not be buried for a number of days because the relatives had to scatter about among themselves and raise the money to bury the person; and that by reason of this insurance taken out by a small weekly premium that they would have a decent burial upon their death.

By Section 1 of the Act life insurance companies and others similarly situated are prohibited from issuing contracts in which they designate any particular person or company to conduct the funeral of the insured, and they are prohibited from entering into any type of contract which otherwise restricts freedom of arrangement for funeral services.

Under Section 2, the companies are prohibited from issuing contracts payable in any thing other than legal tender of the United States. Contracts in effect at the time of the passage of the Act are not affected by this provision.

In Section 3, of the questioned Act such companies as it affects are prohibited from entering into contracts with funeral directors providing that such funeral directors shall conduct the funeral of persons insured by such companies. This section, however, permits the beneficiary under the policy to assign the policy to an undertaker after the death of the insured and after liabilty has accrued.

By Section 4, the companies covered by this Act are forbidden to enter into any contract to furnish funeral merchandise or services upon the death of any person insured. By Section 5, the Commissioner of Insurance

is directed to revoke the license of companies and agents for the violation of the Act and Section 6, makes the violation a misdemeanor.

■ As indicated above it was first insisted that the Act is in violation of Article 2, Section 17 of our Constitution because the caption indicates that the purpose of the bill is to regulate burial insurance whereas the provisions in the body of the Act (as above indicated) prohibit burial insurance to be paid in merchandise and thus it is said that the body of the bill is broader than the caption. One of the purposes of this Section of the Constitution is to protect the people against surprise legislation. It is said that under this caption or title of the Act there is nothing in the world to indicate the prohibitions which are contained in the body of the Act and it is thus said that since there is this inconsistency between the caption and the body of the Act it is unconstituional and void for this inconsistency. The argument on this feature is extended to some length but we are satisfied that this contention is erroneous here because we do not believe that there has been any violation of this provision of the Constitution.

"The two-subject clause of the Constitution was intended to prevent a combination in the same act of laws upon wholly different subjects; to avoid the union of incongruous matters in one statute; to secure unity of purpose in legislative enactments." *Bell v. Hart,* 143 Tenn. 587, 223 S.W. 996.

The late Chief Justice Green in speaking on the subject in *Davis v. Hailey,* 143 Tenn. 247, 252, 227 S.W. 1021, 1022, said:

"So far as section 17, article 2, is concerned, if the various provisions of an act are directed toward a common purpose, and that purpose is expressed in the title, it would make no difference if the several provisions of the act involved all powers of the legislature. This section of the Constitution regulates the syntax of statutes. It imposes no restriction upon the powers exerted, nor upon the commingling of such powers, so long as the provisions of the statute are not incongruous and are germane to the subject expressed in the caption."

And again the Court said in *Kizer v. State,* 140 Tenn. 582, 589, 205 S.W. 423, 425, that:

"The unity of the subject is to be looked for in the ultimate object of the statute; it cannot with reason be held that each step towards the accomplishment of an end or object should be embodied in a separate act, and so long as the steps are of the same general nature and legitimately parts of one system, end, or object, the act is constitutional."

The obvious purpose of this Act is that as stated in the title to regulate burial insurance. When we read the Act we find that burial insurance is regulated to the extent of keeping the insurance companies from writing insurance in furnishing a funeral to bury people and employ undertakers to do this burying. It seems to us that there is nothing incongruous or out of line in thus regulating this business. We have comparatively recently discussed similar questions in the case of *Elliott v. Fuqua,* 185 Tenn. 200, 204 S.W.2d 1016, and *Rule v. Town of Etowah,* 195 Tenn. 634, 263 S.W.2d 498. We see no reason why this rule as there laid down and as is pointed

out from the excerpts above quoted is not applicable here. We pointed out at the outset that this Act, before it had been enacted in the Legislature, had gone through the necessary steps and channels to be enacted into law and among others was the statement as quoted from the Senate Journal that it had been before the insurance and banking committee and had been fully considered by that committee. Thus it is seen that this is not surprise legislation—the Legislature apparently, and even more than presumptively, knew what they were doing.

The Act is not entirely prohibitory because it is noticed that under Section 2, of the Act that contracts in force at the time of passage of the Act are not affected. Likewise Section 3, permits people who have the insurance which is payable in money to assign this insurance. For these reasons this assignment of error must be overruled.

Next it is said that the Act is broader than the caption. A number of the excerpts from Tennessee cases above quoted are somewhat in answer to this proposition and we think are logical answers. It is obvious from reading this caption that the Legislature was attempting to regulate burial insurance. Clearly the provisions of the Act are germane to this subject and meet our constitutional requirements on the subject. We gather from reading the many authorities under this Section of the Constitution that if the subject is properly set out in the caption that it is not necessary to give details. If the body of the Act deals with the matter which is germane to the subject expressed in the caption then the Act is constitutional. There have been many, many cases on this subject and in Volume 185 Tennessee, some

two or three cases will be found, among others are that of *Caldwell v. Harris,* 185 Tenn. 209, 204 S.W.2d 1019, which cites other cases on the question.

A casual reading of the Act shows that all of its provisions relate to burial insurance. Some of these provisions it is true are prohibitory but of course it is not necessary to set out in the caption everything that is to be done in the body of the Act so long as the doings of the Act are germane to the title. We thus for these reasons think that the Act is not broader than its caption.

■ It is next contended that the Act is in violation of Article 1, Section 8, and of the Fourteenth Amendment of the United States Constitution. As we all know, Article 1, Section 8 of our Constitution and the Fourteenth Amendment of the United States Constitution are so closely aligned that they are almost identical. The question under this contention is whether the Legislature, under its police power, may constitutionally regulate life insurance companies by requiring them to pay benefits under their policy in money instead of in funeral merchandise, and by prohibiting them from designating in their contract certain undertakers to conduct funerals of their insureds, and by prohibiting such companies from contracting with undertakers to provide funeral services for their insureds.

We first notice that the Act does not interfere with the right of a citizen to contract for the disposition of his body afer his death. This was apparently admitted in the appellant's brief when he says:

"It is Complainant's contention that these provisions of this Act discriminate against burial insurance

companies by prohibiting the citizens of this State from contracting with them for the disposition of their bodies after death, but *at the same time permits the same citizens to contract with an undertaking establishment to do the same thing.*" (Italics ours.)

When we refer to and examine the Act closely the prohibitory clauses in the Act show that the prohibition is against life insurance companies, fraternal benefit societies, or similar companies or associations from issuing life insurance policies and contracts and certificates, etc., to the people of this State in anything but United States money. The individual citizen is not restricted in his right to contract for the disposition of his body and to contract with those who usually dispose of the body.

It is certainly the law in this State and in all others as far as we know that an insurance company, having been granted the right and franchise of writing contracts of insurance in this State, is subject to the control of the State, not only as to the nature of the business they may do, but also as to the form of contract it may make. Insurance Law And Practice, Appleman, Vol. 19, Sec. 10321, makes similar statements to that as above made and cites authorities from many States in the Union to that effect. As long as the regulations are reasonable they will and should be upheld. To the same effect see 44 C.J.S. Insurance, secs. 55 and 56, p. 518. It would seem to us that thus when the insurance company accepts the benefits granted it by the Legislature that it should not then be in a very good position to challenge the burdens that are put on it for this privilege which it enjoys subject to the will of the Legislature. By this Act nothing is done retroactively—nothing is taken away

from the insurance company except its right to write the kind of insurance in the future that is prohibited by this Act.

■ When the Legislature in its wisdom has seen fit to enact legislation of this type the courts have consistently felt that under our constitution that this was a matter for the Legislature and one that we should not, unless the Constitution is violated, encroach upon. Here the Legislature has before it facts and things known to them and when it enacts Legislation which is apparently for the protection of the public safety, or the public health or the public morals. The court in its wisdom should not encroach upon this act or right of the Legislature. This Court long ago said as reiterated by Chief Justice Neil in Petition of Carter, 188 Tenn. 677, 222 S.W.2d 11, 13:

"Furthermore we are not concerned in determining the constitutionality of an Act 'whether it was dictated by a wise or a foolish policy, or whether it will ultimately redound to the public good, or whether it is contrary to natural justice and equity. These are considerations solely for the Legislature.' *Motlow v. State*, 125 Tenn. 547, 589, 145 S.W. 177, 188, L.R.A. 1916F, 177."

Our only purpose under such matters is to determine whether or not there is plausible reason for the enactment of such legislation. It is true the court at all times reserves the right to pass on the constitutionality of the statutes but in doing so we do not inquire into the policy of the Legislature, that is, the factual background of why they did it if there is a plausible reason back of such legislation. See many cases cited in *State ex rel. Loser v.*

*National Optical Stores,* 189 Tenn. 433, at pages 446 and 447, 225 S.W.2d 263. It is not at all unreasonable for us to believe that the Legislature had the purpose in mind in enacting this legislation of the protection of the public safety, public health and/or public morals of its people. Having thus determined that the legislation is reasonable certainly under these sections of our Constitution and of the United States Constitution the Act is not unconstitutional.

We held in this State that contracts issued by burial companies and associations are life insurance contracts and that they may be regulated by the State. *State ex rel. District Attorney General v. Mutual Mortuary Ass'n., Inc.,* 166 Tenn. 260, 61 S.W.2d 664, *State ex rel. Attorney-General v. Smith Funeral Services,* 177 Tenn. 41, 145 S.W.2d 1021. The Legislature could have in enacting this legislation believed—it is entirely reasonable—that burial associations and societies which had been sanctioned as fraternal benefit societies, were, in many instances organized and sponsored not by the members to be benefited but by funeral directors who used such associations as a means of procuring business for their undertaking establishments. They could have likewise believed and it is entirely reasonable that assessments were made upon the members according to the wishes of the funeral director and not in a manner benefiting the membership society. Thus these and many other instances could be cited where we say that it is entirely reasonable that this legislation was passed for the benefit of the people of the State and it is not unreasonable legislation.

Thus it is that the writers of American Jurisprudence said in Volume 11 of that work at page 1027, that:

"The police power of the state is not limited to regulations necessary for the preservation of good order or the public health and safety. The prevention of fraud and deceit, and cheating and imposition, is equally within the power. Therefore, a state may prescribe all such regulations as, in its judgment, will secure or tend to secure the people against the consequences of fraud and may institute any reasonable preventive remedy required by the frequency of fraud, or the difficulty experienced by individuals in circumventing it, especially when other means have not proved to be efficacious."

The Supreme Court of Michigan in 1951 had before it an Act of the Legislature of the State of 1949 which was to all intents and purposes identical with the Act here attacked. That Court in the case of *Metropolitan Funeral System Ass'n. v. Forbes*, 331 Mich. 185, 49 N.W.2d 131, 133, sustained the constitutionality of the Act. Among other things that court said:

"The policy issued by plaintiff sets forth in detail the various items and services to be furnished by plaintiff for a complete funeral and burial, without designating their quality. The policy is an 'industrial' one, with a weekly premium provided for, and undoubtedly reaches people of low incomes who are inexperienced in business. The surviving beneficiary, with strained emotions caused by the very recent death in the family, is unable to tell whether the funeral services are worth $250 and he can easily be imposed upon to pay large additional amounts for a more elaborate funeral than provided for in the policy. Suffice it to say that the legislature in its discretion and in the exercise of its police power has condemned and for-

bidden the practice by Act No. 257, supra. As was said in *Daniel v. Family Security Life Insurance Co.,* 336 U.S. 220, 69 S.Ct. 550, 553, 93 L.Ed. 632, 10 A.L.R.2d 945: 'We cannot say that South Carolina is not entitled to call the funeral insurance business an evil. Nor can we say that the statute has no relation to the elimination of those evils. There our inquiry must stop.' ''

It would thus seem that the United States Supreme Court by this quotation of the Michigan Supreme Court from that Court have sanctioned statutes prohibiting insurance contracts providing for payment in funeral merchandise and services. It has likewise gone further and approved a state statute prohibiting insurance companies and their agents from operating in the undertaking business and undertakers from serving as agents for insurance companies. This is in line and supports the conclusions hereinabove reached and stated. *Kenton & Campbell Benev. Burial Ass'n. v. Goodpaster,* 304 Ky. 233, 200 S.W.2d 120, (the opinion in this case refers to the earlier cases in Kentucky on the question) and *State v. Gateway Mortuaries,* 87 Mont. 225, 287 P. 156, 68 A.L.R. 1512, are relied on by appellants. As we see it these cases have clearly marked distinctions from that now before us as will be seen by a careful reading. Be that as it may, we prefer to follow the Michigan case.

It thus appears that the second assignment must be overruled.

(9) It is next contended that the Act in question violates Article 11, Section 8, of our Constitution. Under this assignment it is insisted that the Act in question is class legislation of an arbitrary nature. The burden of

this insistence is that the Act discriminates against insurance companies by prohibiting them from contracting with citizens of the State to bury such citizens while the Act permits undertakers to contract to bury such citizens.

Of course everyone knows that undertaking establishments exist for the purpose of burying dead people and that life insurance companies or insurance companies are organized for the purpose of issuing various kinds of insurance contracts and are not ordinarily ever thought of as existing for the purpose of burying dead people. It seems thus that the classification that they have given here is perfectly logical and reasonable. Section 8 of Article 11 of our Constitution does not prohibit classifications, the only prohibition of this Section of the Constitution is that these classifications will not be unreasonable and arbitrary. On this question this Court long ago in *Scott v. Nashville Bridge Co.*, 143 Tenn. 86, 108, 223 S.W. 844, 850, said:

"It has been held by this court that when the classification made and stated in a statute is challenged, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. It is also the rule that one who assails the classification contained in a statute has the burden of showing that it does not rest on any reasonable basis, but is essentially arbitrary. * * *

"It is the general rule that statutes public in their character, and otherwise unobjectionable, may extend to all citizens or be confined to particular classes* * *."

This statute applies to all insurance companies or burial associations alike—it does not single out any particular one but takes them all. There is no discrimination. The fact that this particular company would suffer some pecuniary loss or injury because they cannot write this kind of insurance in the future does not establish its unreasonableness or invalidity. *Spoone v. Mayor & Aldermen of Town of Morristown,* 185 Tenn. 454, 461, 206 S.W.2d 422.

It is likewise contended that this Act was passed for the benefit of private interests. We of course cannot go into this question, into the question of the motive of the Legislature in enacting legislation. Our function is to declare the law, not to determine whether the particular legislation is dictated by a wise or a foolish policy. See authorities heretofore referred to and quoted from, as well as *Royal Jewelers Co. v. Hake,* 185 Tenn. 254, 205 S.W.2d 963; Petition of Carter, supra.

This assignment, we think, is likewise without merit.

We have really gotten a great deal of interest out of this case, reading the various authorities and studying the matter and from the excellent briefs filed by both sides herein. After spending several days in doing this we have concluded as hereinbefore stated and for the reasons thus stated the decree of the Chancellor must be affirmed.

## On Petition to Rehear

The insurance company, appellant, has filed herein a courteous, dignified and rather caustic petition to rehear. They have likewise filed a supplemental petition herein and have answered the reply brief of the State. We have

read each of these documents several times, and after doing so have reached our conclusion hereinafter to be stated.

In the first place these various documents filed praying a petition to rehear make no new argument and cite no new or additional authorities. The argument made is one to be made to the Legislature that enacted the legislation complained of and not to the Court. Apparently it has been forgotten that this is an attack upon existing legislation. We have again re-read our opinion as heretofore prepared and handed down in this case and feel that the conclusions therein stated are inescapable under the authorities and opinions heretofore decided by this Court and which are cited in this opinion as a basis for our conclusion.

The petition to rehear states that the primary question is:

"Are acts of the Legislature constitutional where they constitute unnecessary and unreasonable regulations or prohibitions upon a lawful business with no real tendency to protect the public health, safety or morals?"

It was our purpose in the original opinion to answer this question. We think that we did and think that the Legislature had the right and it was their duty to determine the matter for the reasons we expressed in our original opinion. In other words it did not seem to us that this Act was an unnecessary and an unreasonable regulation or prohibition upon the business which it attempted to regulate.

Our purpose in stating what we did as to what the Legislature could have found was done arguendo to

show what they could have had in mind in enacting this legislation and if they did have these things before them and did it then the legislation was perfectly reasonable. We respectfully disagree with statements of the petitioner that there was no reason why a court should speculate as to why the Legislature might have enacted an act. Clearly under the various constitutional attacks made on this legislation it was our duty to so consider the matter. When we look at an act of the Legislature under the attack made on this act under Article 1, Section 8, it is our duty to hold the act constitutional if it is not purely arbitrary. If the classification has some reasonable basis merely because it is not made with mathematical nicety, or because in practice it results in some inequality it is not unconstitutional. *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, L.R.A., 1916F, 177.

■ With the Legislature rests determination of the reasonableness of regulations under the police power and a court will not examine the question *de novo* and overrule such judgment by substituting its own, unless it clearly appears that those regulations are so "beyond all reasonable relation to the subject to which they are applied as to amount to merely arbitrary usurpation of power", or they are unmistakably and palpably in excess of legislative power or they are arbitrary "beyond possible justice" and if they are so of course the court declares them void, otherwise it is the duty of the court to declare the act constitutional. *State v. McKay,* 137 Tenn. 280, 193 S.W. 99.

■ Any state of facts that can be reasonably conceived that would sustain the Legislature in enacting an act will be assumed to have existed when the law was enacted; and one assailing this classification and such a

law must bear the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. *Motlow v. State, supra.*

In conclusion we must again repeat one paragraph from our original opinion which is absolutely sound, as we see it, and the basis for our conclusion herein. We said:

"Our only purpose under such matters is to determine whether or not there is plausible reason for the enactment of such legislation. It is true the court at all times reserves the right to pass on the constitutionality of the statutes but in doing so we do not inquire into the policy of the Legislature, that is, the factual background of why they did it if there is a plausible reason back of such legislation." Citing authorities.

After having fully considered the petition to rehear herein we must overrule and deny it. A decree may be entered accordingly.