**STATE of Tennessee, Plaintiff/Appellant,**

**v.**

**SOUTHERN FITNESS AND HEALTH, INC., a Tennessee Corporation; Billy Wayne Miller, Individually and as a Director and Officer of Southern Fitness and Health, Inc., Defendants/Appellees.**

Supreme Court of Tennessee, at Jackson.

Dec. 29, 1987.

W.J. Michael Cody, Atty. Gen., Barry Turner, Asst. Atty. Gen., Nashville, for plaintiff/appellant.

William Houston Brown, Jackson, for defendants/appellees.

## OPINION

COOPER, Justice.

This is an appeal from the judgment of the Chancery Court of Madison County declaring the Tennessee Health Club Bond Act, T.C.A. §§ 47–18–301 through 320, to be in violation of the Constitution of the United States and the Constitution of Tennessee. In our review of the statute and the record, we find no basis to hold the Act to be unconstitutional and reverse the judgment of the trial court.

The Tennessee Health Club Bond Act, which became effective on January 1, 1985, requires the operator of a health club to file a surety bond, a certificate of deposit, or an irrevocable letter of credit in the amount of $25,000.00 with the Division of Consumer Affairs of the State of Tennessee, before the health club operator enters or offers to enter into a "health club agreement." T.C.A. § 47–18–302(a), (e), (f). For the purposes of the Act, "health club" is defined as "any enterprise organized for profit ... which offers on a regular, full-time basis services or facilities for the development or preservation of physical fitness through exercise, weight control, or athletics." Where a health club operator fails to file the required security, its health club agreements are unenforceable against the buyer. T.C.A. § 47–18–303.

The Health Club Bond Act was amended, effective July 1, 1986, to provide for an exemption from the "posting of security" requirement for a health club operator who certifies to the Division of Consumer Affairs that it has operated its health club for five years under the same ownership, and is in compliance with all other requirements of the Act. T.C.A. § 47–18–302(g). Tenn. Code Ann. § 47–18–303 was amended to make a health club agreement unenforceable against the buyer, not only when an operator fails to obtain and file a bond, certificate of deposit, or irrevocable letter of credit, but also if a buyer was induced to sign the health club agreement in reliance upon any false, deceptive or misleading information, or if the agreement fails to conform with the provisions of the Act.

The amended Act also requires that all health club agreements be in writing, signed by the buyer, designate the date on which the buyer signs the agreement, and

include a statement informing buyers that they have a right to cancel the agreements within three days from the date of signing. T.C.A. § 47–18–305. In addition, the duration of a health club agreement is limited to no more than thirty-six months, and the use of an automatic renewal or extension clause in the agreement is prohibited. T.C.A. § 47–18–306. A buyer's waiver of any requirements of the Health Club Bond Act is declared void as contrary to public policy. Finally, the amendment provides that T.C.A. §§ 47–18–302(g), 303, and 305 to 307 do not affect any rights or duties that matured, or any liabilities or penalties that were incurred, or any proceedings on or before the July 1, 1986, effective date of the amendment. T.C.A. § 47–18–308.

On May 16, 1986, the State of Tennessee, through its Department of Consumer Affairs, filed this action seeking to enjoin Southern Fitness and Health, Inc. and its president, Billy Wayne Miller, from operating a health club in violation of the Tennessee Health Club Bond Act and to recover any loss by a consumer attributable to the defendants' violations of the Act. The defendants then filed the required surety bond. On June 6, 1986, by agreement, a temporary injunction was issued prohibiting the defendants from attempting to obtain payment on any health club agreement entered into between January 1, 1985, and June 6, 1986, from customers who voluntarily ceased to make payments. The defendants also were enjoined from representing that health club agreements executed between January 1, 1985, and June 5, 1986, were legal and enforceable.

On August 15, 1986, the defendants filed a motion to dismiss, alleging the definition in T.C.A. § 47–18–301(3) of a "health club agreement" as one "lasting or capable of lasting for a period of at least three months;" the definition of a "health club" in T.C.A. § 47–18–301(4) to include only for-profit organizations; and T.C.A. § 47–18–302(g), which provides for an exemption from the bond requirement for any health club that has operated under the same ownership for at least five years and is in compliance with other requirements of the Act, created legislative classifications

violative of the equal protection provisions of the Fourteenth Amendment to the Constitution of the United States, and Article 11, Section 8 of the Constitution of Tennessee. The defendants further charged that the Health Club Bond Act was a retroactive law impairing obligations of contract in violation of Article 1, Section 20 of the Constitution of Tennessee. Further, the defendants contended that the single statutory bond amount in the act was arbitrary, and thus unconstitutional.

A judgment was entered on May 1, 1987, dismissing the action. In the judgment the trial court found that T.C.A. § 47–18–301(3) and (4), and T.C.A. §§ 47–18–302 and 303 violate Article 1, Section 8 of the Tennessee Constitution and the Fourteenth Amendment to the United States Constitution in that they permit unequal and arbitrary application of the law, they fail to have a reasonable basis for their classifications, and they are arbitrary, discriminatory, and unreasonable. The order further states that the bonding requirement is arbitrary and unreasonable, because of the single bonding amount, and thus, is unconstitutional.

We are unable to determine from the chancellor's opinion letter to counsel, which was the basis of the judgment entered, or from the judgment itself, whether the chancellor used the "strict scrutiny" test or the less rigorous "rational basis" test in holding the Health Club Bond Act to be unconstitutional. Needless, to say the State insists that the classifications set forth in the Act should be subjected to the "rational basis" test, while the defendants argue the constitutional issues on the basis of the "strict scrutiny" test.

In *Harrison v. Schrader*, 569 S.W.2d 822 (Tenn.1978), this court pointed out that "[a] classification will be subject to strict scrutiny only when it impermissibly interferes with the exercise of a fundamental right (*e.g.*, voting, interstate travel) or operates to the peculiar disadvantage of a suspect class (*e.g.*, alienage, race)." None of which is present in this case. Other classifications generally have been subjected to the rational basis test. *See Massachusetts*

*Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), *City of Memphis v. International Brotherhood of Electrical Workers Union, Local 1288,* 545 S.W.2d 98 (Tenn.1976). Moreover in determining whether a rational basis exists, "the burden of showing that a classification is unreasonable and arbitrary is placed upon the individual challenging the statute; and if any state of facts can reasonably be conceived to justify the classification or if the reasonableness of the class is fairly debatable, the statute must be upheld." *Harrison v. Schrader,* 569 S.W.2d 822, 826 (Tenn.1978).

In our opinion, the test to be applied in determining the validity of the classifications set forth in the Health Club Bond Act is the "rational basis" test. Under this test, before a classification can be found to be in violation of the equal protection guaranty of the United States Constitution and of the Constitution of the State of Tennessee, it must be shown that the classification has no reasonable or rational relationship to the legislative objective of the Health Club Bond Act.

The legislative concern underlying the Act is with the financial viability of health clubs going into operation in this state, and the potential for consumer loss should they go out of business. As is pointed out by the State, "significant consumer loss results when a health club sells memberships, and then fails to open, or fails to continue in business. Such failures are a recurring problem in the health club industry. *See* Federal Trade Commission, Bureau of Consumer Protection, *Health Spas Final Staff Report,* vol. I, 96–101 (1984). Whether such failures are caused by poor fiscal practices, such as undercapitalization of the business or outright consumer fraud, the result for the members is the same; they receive neither the consideration they paid to the club, nor the facilities for which they contracted." The Health Club Bond Act was the legislature's response to this situation. The method chosen to limit consumers' losses was to require the health club operator to post a surety bond, certificate of deposit, or irrevocable letter of credit in the amount of $25,000.00, subject to claims of buyers when a health club operator fails to fully perform the obligations promised in the health club agreement. In our opinion, this approach is a rational and reasonable approach to the legislative objective of ensuring that a buyer of health services either receives the services or is in a position to recover the value of the unused part of the health club agreement for which the consumer has paid.

■ The defendants insist that the limiting of the application of the Health Club Bond Act to for-profit corporations is arbitrary and discriminatory and is violative of the equal protection guaranteed by the federal and state constitutions. Keeping in mind the legislative objective of protecting buyers of health club services and, at the same time, permitting such services to be offered to the public, we think it reasonable for the legislature to conclude that non-profit organizations offering health club services do not present the same potential for consumer fraud and deception as for-profit enterprises, nor the same risk of financial instability. Non-profit organizations generally return the bulk of earned income to the business, since a nonprofit organization is prohibited from paying dividends or any part of its income or profits to its members, directors or officers. *See* T.C.A. § 48–1–603. Further, we note that a number of states that have passed health club legislation similar to that under review have found less chance of consumer fraud and deception in the operation of non-profit organizations and have excluded them from health club regulatory statutes. *See* Ala. Code § 8–23–2(1); Conn.Gen.Stat.Ann. § 21a–216(1); Ill.Ann.Stat. ch. 53, ¶ 3; Ky. Rev.Stat.Ann. § 367.900(1); La.Rev.Stat. Ann. § 51:1576(C); Md.Code Ann., Commercial Law § 14–12B–01(b)(3); Miss.Code Ann. § 75–83–1(a)(i); Nev.Rev.Stat. § 598.800(1); N.H.Rev.Stat.Ann. § 358–I: 2(IV); N.C.Gen.Stat. § 66–118(2); Va. § 59.1–296. (R. II, 217, 222, 231, 234, 240, 243, 261, 271, 273, 279, 283).

■ The defendants also insist there is no rational basis for limiting the application

of the Health Club Bond Act to agreements of three months duration or longer, that a consumer would be damaged under a contract of shorter duration if there is a default by the health club. Certainly, any contract exposes the buyer of health club services to potential loss; however, the loss under a contract of less than three months duration would be relatively insignificant. In limiting the application of the act, the legislature did no more than balance the consumer's potential loss with the degree of regulation of the health club industry. This was a policy decision. It is not the function of this court to determine the wisdom of a policy decision of the legislature. *See Cosmopolitan Life Insurance Company v. Northington,* 201 Tenn. 541, 558, 300 S.W.2d 911 (1957); *see also Sutphin v. Platt,* 720 S.W.2d 455 (Tenn.1986). Our function here is to determine whether the limiting of the Health Club Bond Act to agreements of three months or longer has a rational basis and is related to the legitimate legislative objective of limiting consumer loss due to a health club's inability to fulfill its obligations under its membership agreements. We think the statutory definition of "health club agreements" meets the "rational basis" test.

■ The 1986 amendment to the Health Club Bond Act created an exemption from the bonding requirement for health clubs that have been operated for at least five years under the same ownership, and is in compliance with all other requirements of the Act. Defendants argue that the selection of five years operation as the basis of the exemption is inconsistent with the ban on contracts of more than three years duration, is "patently arbitrary and discriminatory," and is, consequently, unconstitutional. We see no merit in this argument. The exemption is directly and reasonably related to the legitimate legislative objective underlying the Health Club Bond Act, which is to limit consumer loss due to a health club's inability to satisfy its obligations under its membership agreements. By conditioning the exemption on the operation of a health club under the same ownership for at least five years, the legislature is requiring a demonstration of financial stability and a continuing ability to operate the club. As is pointed out by the State, "it is certainly reasonable for the legislature to think that a 'fly-by-night' health club, or a club with financial problems, would be unable to operate under the same ownership for five years." As to the argument that the legislature should have chosen some other period of time as the basis of the exemption, it should be noted that it is for the legislature to determine, as a matter of policy, the time necessary for a health club to operate under one management to demonstrate financial ability and stability.

■ The defendants argue that the provision in the Act setting a single bonding amount, regardless of the size of the health club operation, is arbitrary and discriminatory and thus unconstitutional. The requirement of a bond is in keeping with the objective of the Health Club Bond Act of protecting buyers of health club services from economic loss. The question of whether it might be preferable for the legislature to have provided for a bond amount that varies with the size of the club is a policy decision. Tennessee's legislature chose, as a policy decision, to have a single bond amount equally applicable to all health clubs. We repeat it is not the function of the courts to determine the wisdom of a particular policy decision. The test is whether the statute has a rational basis related to the legitimate legislative objective underlying the health club bond law, and such a basis exists here.

As to the argument that the single bond amount results in inequality in favor of the larger more prosperous health clubs, we point out that "a classification is not unconstitutional merely because in practice it results in some inequality, where the classification has a reasonable basis." *Estrin v. Moss,* 221 Tenn. 657, 430 S.W.2d 345 (1968).

■ It is also argued that the Health Club Bond Act impaired existing contract rights in violation of Article 1, Section 20 of the Constitution of the State of Tennessee. We find no basis in the statute for this argument. To the contrary, contracts in

existence before January 1, 1985, the effective date of the Act, are not affected in any way by any of the provisions of the Act. The bond or alternative security required by the Act must be filed by a health club operator only if the operator enters or offers to enter into any health club agreements on or after January 1, 1985. *See* T.C.A. § 47–18–302. And it is only those agreements that are rendered unenforceable by a health club operator's failure to file the required bond or alternative security. We note further that by expressly conditioning the application of the Act on the occurrence of any event on or subsequent to the effective date of the Act, the legislature evinced an intent that the provisions are not to be applied retroactively. Since the Act applies only to health club agreements entered into on or after the effective date of the Act, it follows that it does not impair any contractual obligations or vested property rights of the defendants, and does not contravene Article 1, Section 20 of the Tennessee Constitution.

The judgment of the trial court holding the Tennessee Health Bond Act to be unconstitutional and dismissing the action brought by the State is reversed. The cause will be remanded to the Chancery Court of Madison County for trial. Costs in the appellate courts will be paid by the defendants. The adjudging of costs in the trial court will be determined after the trial of the cause on the remand.

HARBISON, C.J., and FONES, DROWOTA, and O'BRIEN, JJ., concur.